PETER COTTON v. NORTH CAROLINA R. R. CO.

(Filed 25 November, 1908).

1. Nonsuit—Evidence, How Construed.

Upon a motion as of nonsuit upon the evidence, the evidence must be construed in its most favorable light to the plaintiff.

2. Master and Servant—Safe Appliances—Negligence—Damages.

In an action for damages for injuries received, alleged to have been the result of improper instruments given by the employer to the employee with which the latter was to do the work entrusted to him, the liability of the former, in damages, depends upon whether he was negligent in respect to the instrumentalities provided.

3. Same—Proof Required.

For the recovery of damages for injury alleged to have been caused to an employee by reason of the negligently furnishing by the employer improper implement with which he was to perform his work within the scope of his employment, the former, to establish his case, must show: (1) That the implement furnished by the master was, at the time of the injury, defective; (2) That the master knew of the defect, or was negligent in not discovering it and making needed repairs; (3) That the defect was the proximate cause of the injury. (In this case, the question as to the duty of the servant to inform the master of the defect did not arise upon the evidence).

4. Master and Servant—Safe Appliances—Knowledge of Defect— Inspection—Negligence.

The employer must not only use ordinary care and diligence to provide safe and suitable implements for the employee to do the work required of him, but he must exercise a reasonable supervision over them and ordinary care in keeping them in safe condition. When an employee is injured by a defective truck on which he was required to carry trunks to a train at defendant's station, and there is evidence that a pin keeping a wheel on had been worn by constant use so that it gave way, resulting in the injury complained of, the question for the jury to say whether, by a careful inspection, the defendant should have discovered the defective condition.

ACTION tried before *Moore, J.,* and a jury, February Term, 1908, of GUILFORD.

This action was brought to recover damages for injuries

alleged to have been caused by the defendant's negligence. The plaintiff who, on 13 May, 1906, was in the employ of the defendant, was ordered by George W. Vernon, the baggage agent at Greensboro, N. C., to carry some trunks from the north bound train No. 34, which had just arrived, to the east bound train No. 112. Vernon told him to make haste, as the east bound train was about to leave. Plaintiff and Will Suggs started with the truck, which weighed one thousand pounds, and was loaded with trunks. He was pulling with his back towards the trunks and Suggs was pushing the truck. In going from one train to the other they had to pass around another truck. Will Suggs testified: "When we went around (the other truck), he was guiding the truck and I was pushing; it was heavily loaded. When he turned around he ran the off wheel of the truck over the rail and, as he turned, the wheel came off and the truck caught his foot— that is the way it happened. The wheel that fell off the truck had crossed the iron track—the right wheel; it was going right straight across it and did not run in any groove. It was right level there. It was night, but the lights were around there. I said a minute ago that, in running around the other truck, the wheel went on the outside of the rail; there is no flange to the wheel. The rail is higher than the inside of the track, but is about level with the floor. In between the floor in the center of the track and the rail there is a groove, so that, in coming around from the inside, the wheel would have to pass over that groove and against the rail. The wheel went straight across the track; did not run down the track." The plaintiff testified that the wheel fell off the spindle when the truck struck the southbound track. George W. Vernon, a witness for the defendant, testified: "I made an examination of the wheel right then and there. The platform is so built up there that the outside is up level and smooth with the top of the rail; on the inside is a space of about three inches. The spindle had fallen on the

platform a few inches from the rail and the wheel had fallen on the spindle. I took the wheel off the spindle and examined it. The pin was in the spindle, but had been bent outwards. Both ends of the pin were bent down flat to the spindle and the wheel had drawn off over the pin; the wheel coming over both the pin and the spindle. The pin was not broken; it was simply bent. The pin was a little worn; the truck had been used some time. There was no wear of the spindle or pin that would injure the use of the truck that I could observe. I found the spindle lying down near the groove in the track, and the wheel over the spindle, and the pin and spindle in the condition I have described. I didn't see the wheel when it came off. I could not tell how long the pin had been in use, but it was somewhat worn. I could not tell how long the truck had been in use, but it had been used for some time. It would be impossible for me to tell, as we were always getting new trucks. I could not tell the length of time it had been in use; could not say whether it had been in use three years; might have been and it might have been less. Could not tell whether we had trucks that had been in use four or five years." There was evidence tending to show that the plaintiff was struck by the iron bar of the truck and, also, by one of the trunks which fell from the truck. At the close of the evidence, the defendant moved to nonsuit the plaintiff. The motion having been refused, the defendant excepted. There was a verdict for the plaintiff and, judgment having been entered thereon, the defendant appealed.

*John A. Barringer* for plaintiff.
*Wilson & Ferguson* for defendant.

WALKER, J., after stating the case: Where a motion to dismiss an action is made, under the statute, the evidence must be construed in the view most favorable to the plaintiff, and every fact which it tends to prove, and which is an essential ingredient of the cause of action, must be taken as estab-

lished, as the jury, if the case had been submitted to them, might have found those facts from the testimony. *Brittain v. Westhall,* 135 N. C., 492. Applying this rule, we think there was evidence in the case proper for the consideration of the jury upon the question of negligence. The duty of the employer to his employee is thus stated in *Marks v. Cotton Mills,* 135 N. C., 290: "The employer does not guarantee the safety of his employee. He is not bound to furnish him an absolutely safe place to work in, but is required simply to use reasonable care and prudence in providing such a place. He is not bound to furnish the best known machinery, implements and appliances, but only such as are reasonably fit and safe and as are in general use. He meets the requirements of the law if, in the selection of machinery and appliances, he uses that degree of care which a man of ordinary prudence would use, having regard to his own safety, if he were supplying them for his own personal use. It is culpable negligence which makes the employer liable, not a mere error of judgment. We believe this is substantially the rule which has been recognized as the correct one and recommended for our guide in all such cases. It measures accurately the duty of the employer and fixes the limit of his responsibility to his employee," citing *Harley v. B. C. M. Co.,* 142 N. Y., 31. So that the liability of the employer to the employee in damages for any injury the latter may receive, while engaged in his work, depends upon whether the employer has been negligent. *Avery v. Lumber Co.,* 146 N. C., 592; *Berkley v. Waste Co.,* 147 N. C., 585. In respect to instrumentalities provided by the master for the use of the servant, the latter, in order to establish his case, must show: 1. That the implement furnished by the master was, at the time of the injury, defective. 2. That the master knew of the defect or was negligent in not discovering it and making the needed repairs. 3. That the defect was the proximate cause of the injury. *Hudson v. R. R.,* 104 N. C., 491; *Shaw v. Manufacturing*

*Co.,* 143 N. C., 131; *R. R. v. Barrett,* 166 U. S., 617.   We may omit any reference to the duty of the servant to inform the master of any defect found by him, as there is no evidence in this case that fixes the plaintiff with any knowledge of the alleged defect in the truck, either in law or in fact. There is another duty the master owes to his servant and that is to inspect, at reasonable intervals of time, the implements he furnishes for use by his servant.   1 Labatt M. & S., sec. 154 and 157; Bailey's Pers. Inj., sec. 2638; *Leak v. R. R.,* 124 N. C., 455.   At what intervals this inspection should be made, will depend upon the kind of implement used and the special facts and circumstances of the case.   The defendant alleges in the answer that the pin was not in the spindle and for that reason the wheel fell off and, further, that the plaintiff should have known that the pin was missing; but there is no evidence to sustain this allegation.   The defendant's own witness testified that the pin was "somewhat worn," and that "both ends of the pin were bent down flat on the spindle and the wheel had drawn off over the pin."

We cannot say, as a matter of law, that the pin had not been weakened by being worn and was strong enough to hold the wheel in its place on the spindle.   The truck was being moved in the ordinary and usual way, so far as appears, and in the proper place.   As it gave way, under the circumstances, and was worn by constant use, the jury might well have inferred, as they did, that it was either originally defective and insufficient or had become so by being "somewhat worn."   It was for the jury to say whether, by a careful inspection, the defendant could have discovered its defective condition.   We must assume, in the absence of the charge of the Court, that they were properly instructed as to this feature of the case. In *Car Co. v. Parker,* 100 Ind., 181, the Court holds: It is the duty of the master to use ordinary care and diligence to provide safe and suitable machinery for use by the servant whom he employs to work upon it.   The master's duty does

not end with providing safe and suitable machinery, but he is also bound to exercise a reasonable supervision over it, and to exercise ordinary care in keeping it in safe condition for use by his servants, and this duty he cannot rid himself of by casting it upon an agent. It is only ordinary care that must be exercised by the master, such care as the peculiar conditions and circumstances would suggest to a man of ordinary prudence, but this requires that he should take notice of the liability of an implement he places in the hands of his servant to become worn and unsafe from age and use. See also *Parsons v. R. R.,* 94 Mo., 286; *Hackett v. Manufacturing Co.,* 101 Mass., 101; *R. R. v. Holt,* 29 Kansas, 149, and Bailey's Pers. Inj., sec. 2634-2638, where the subject is fully discussed. In *Hackett v. Manufacturing Co., supra,* it was held that whether an employer was negligent in not ascertaining that a chain which operated an elevator had been worn and become thinner and therefore unsafe, by reason of which the elevator fell and injured the plaintiff, was a proper question for the jury. The same authorities also sustain the proposition that the plaintiff, when he was ordered by Vernon to use the truck, had the right to assume that it was in a safe condition.

Our conclusion is that the Court properly submitted the case to the jury upon the evidence.

No error.