This action was brought to recover damages for the death of plaintiff's intestate, alleged to have been caused by the negligence of the defendant. The defendant moved for judgment as of nonsuit, which motion was refused, and the only question for our consideration is, Was the evidence sufficient to be submitted to the jury, who found by their verdict that there was negligence which was the proximate cause of the *Page 35 
injury, and that the intestate did not, by his own negligence, contribute to the injury which caused his death. In passing upon the single exception, we are restricted to a certain view of the evidence by a well-settled rule of law which we have formerly stated as follows: "Where a motion to dismiss an action is made, under the statute, the (46) evidence must be construed in the view most favorable to the plaintiff, and every fact which it tends to prove, and which is an essential ingredient of the cause of action, must be taken as established, as the jury, if the case had been submitted to them, might have found those facts from the testimony." Cotton v. R. R., 149 N.C. 227; Brittain v. Westhall,135 N.C. 492; Freeman v. Brown, 151 N.C. 111; Deppe v. R. R.,152 N.C. 79.
The statement of a few of the salient facts which the evidence tends to establish will suffice for the purpose of testing the soundness of the position taken by the defendant's counsel in support of the motion for a nonsuit. The defendant, at the time of the injury to the intestate, was a corporation engaged in the business of extracting tannic acid from chestnut wood by means of machinery and other appliances. The process by which this was done was fully explained by the witnesses. The wood is chopped very fine and boiled in large vats or tubs 14 feet in diameter, the tops of which were about 30 inches above the level of the floor of the defendant's leech-house. Over tub No. 1 there was a platform 8 or 9 feet square, on which rested the machinery, consisting of sprocket wheels, belting, shafting, chains and gearing. The platform was surrounded by a beam which stood above it about 10 inches, thereby forming a rim at its outer edge; the space between the beam and the machinery was in width about 10 or 12 inches, barely leaving room for a person to step between the sprocket wheel and the beam. This was the walkway for the use of the intestate in performing his work. There was no railing around it. The gangway and beam were covered with oil and grease and were very filthy and slippery. There was no lid or covering to the vat, the temperature of the liquid in which ranged at times from 200 to 210 degrees Fahrenheit. There had been a lid on the vat, but by long usage and the effect of the acid on the wood of which it was made, it had fallen off from decay. The intestate was employed by the defendant as oiler of the machinery. He was 16 years old, and to perform the duty assigned to him he was required to go upon the platform at the point directly above the vat. While engaged in leaning over and (47) oiling a part of the machines on 19 July, 1905, and, as the jury found, without any fault on his part, his foot slipped over the greased surface of the platform and beam and he fell in the seething caldron below, after struggling to save himself, and was so badly scalded that his death soon followed from the injuries he received. *Page 36 
We cannot adopt the suggestion of the defendant that the intestate did not slip from the platform, but fell in the vat in some other way, because there is abundant evidence to show that, while no one saw the intestate when he fell, there were footprints and handprints indicating that intestate had slipped and attempted to catch as he fell from the platform. Upon this showing by the plaintiff — and we have not stated even the substance of all the evidence — the defendant contends that there is not sufficient proof of negligence. The plaintiff, on the contrary, imputes negligence to the defendant in two respects: (1) That it failed to cover the vat of boiling liquid, when by the relative position of the vat and the platform over it and the peculiar construction of the latter, especially with reference to its width, the position of an employee required to use it in performing his work was rendered dangerous. (2) That it neglected to provide a reasonably safe platform where the intestate could stand while oiling the machinery, and allowed the one it did provide to become saturated with oil and grease so that it afforded but a very precarious footing for the intestate and other employees, for whose use it was erected, and that they were thereby unnecessarily exposed to danger when performing their work.
The master does not guarantee the safety of his servant while engaged in the discharge of his duties. He is not an insurer, and is not bound to furnish him an absolutely safe place to work in, but is required simply to use reasonable care and prudence in providing such a place. He is not bound to furnish the best known machinery, implements, and appliances, but only such as are reasonably fit and safe and in general use. He meets the requirements of the law if, in the selection of machinery and appliances, he uses that degree of care which a man of ordinary (48) prudence would use, having regard to his own safety, if he were supplying them for his own personal use. It is culpable negligence which makes the employer liable, not a mere error of judgment. We believe this is substantially the rule which has been recognized as the correct one and recommended for our guide in all such cases. It measures accurately the duty of the employer and fixes the limit of his responsibility to his employee. So that the liability of the employer to the employee in damages for any injury the latter may receive while engaged in his work depends upon whether the employer has been negligent. In respect to instrumentalities provided by the master for the use of the servant, the latter, in order to establish his case, must show: (1) That the implement furnished by the master was, at the time of the injury, defective. (2) That the master knew of the defect, or was negligent in not discovering it and making the needed repairs. (3) That the defect was the proximate cause of the injury. Cotton v. R. R., 149 N.C. 227;Marks v. Cotton Mills, 135 N.C. 290; Harley v. B. C. M. Co., *Page 37 142 N. Y., 31; Avery v. Lumber Co., 146 N.C. 592; Barkley v. Waste Co.,147 N.C. 585; Hudson v. R. R., 104 N.C. 491; Shaw v. Mfg. Co., 143 N.C. 131;R. R. v. Narrett, 166 U.S. 617. These duties which the master owes to his servant cannot be delegated.
We may omit any discussion of the duty of the servant to inform the master of any defect found by him and of which the master is ignorant, as it is not essential to his liability for an injury upon the ground of negligence that he should actually know of the defect, for he owes to the servant another duty, which is to carefully inspect, at reasonable intervals of time, the machinery, implements, ways and appliances provided for the use of his servant in the performance of his work. 1 Labatt M. and S., secs. 154 and 157; Bailey's Pers. Inj., sec. 2638; Leakv. R. R., 124 N.C. 455; Cotton v. R. R., supra. There is abundant evidence in this case to show that if the defendant did not have actual knowledge of the defect, it had what is its legal equivalent, the full opportunity, by inspection, to discover it. The defect in the platform was surely the proximate cause of the injury to the intestate, resulting in his death, so that the only remaining question to be considered is, Was the defect a negligent one or caused by the failure of the defendant (49) to exercise that degree of care which his duty to his servant required of him under the facts and circumstances, as detailed in the record? We will proceed now to a brief discussion of this matter in the light of the established principle governing such cases.
The jury have acquitted the intestate of any negligence, and we have found no evidence, or any combination of facts fairly inferable from the testimony, which tends to impeach the correctness of this conclusion or to show any culpable negligence on the part of the intestate. It may fairly be deduced from the evidence that if the platform had been either wider or protected by a rail, or, in the absence of either of these precautions against injury to the servant, if the platform, as it was constructed, had been kept clean or free from oil and grease which made it slippery, the intestate could have oiled the machinery in safety, and the terrible agony which he suffered and his subsequent death would not have occurred. The adoption of a few simple and precautionary measures, comparatively inexpensive, would have prevented the injury and saved his life.
The plaintiff, in order to show negligence, was not confined to proof of any single or special defect, for he might rely upon all of them — the narrowness of the platform, its saturation with oil, and the absence of a guard-rail or other sufficient protection against slipping and falling into the vat.
In Aiken v. Mfg. Co., 146 N.C. 324, we held there was evidence of negligence, where it appeared that the plaintiff had slipped on a platform, *Page 38 
which had become wet from the rain, and fallen to the ground. "There was ample evidence (said Justice Connor in that case) of negligence on the part of the defendant in failing to provide a reasonably safe way for the plaintiff to perform the service required of him. The failure to provide the platform or gangway with a railing approaches very closely to negligence per se; it clearly justified the jury in finding that it was dangerous."
(50) Mundhenke v. Mfg. Co., 1 L.R.A. (N.S.), 278, presents a state of facts much like those we find in the record before us. The plaintiff slipped on a greasy floor while walking through an aisle or passageway and fell on machinery which was in motion, so that his hand was brought in contact with the gearing and severely injured. The Court said with respect to the question of negligence: "The condition and pertinent fact are so peculiarly a matter for the jury that we are not disposed to take it away from them. The gearing was very near the place in which the plaintiff was depositing the filling, and a misdirection of the hand in but a few inches would carry it to the point of danger; and it is reasonably inferable that the slipping of the foot was the adequate proximate cause of the accident. It is but a humane duty that the employers of youth about factories should observe every reasonable precaution to protect the comparatively unwary from accident and disaster. If the gearing in the present case had been covered or hooded, which could have been done at a trifling expense, no accident could have happened; and if the aisle had been kept clean of grease, it is quite probable that the result would have been avoided."
The evidence, in the favorable view to the plaintiff we are privileged to take of it, tends to show that the defendant did not comply with its duty to the intestate by providing him with a reasonably safe place to perform his work, in the exercise of that ordinary care and prudence in the conduct of its business which the law exacts of it, and it does not appear, at least with sufficient conclusiveness, that there was any fault on the part of the intestate which requires us to hold against him upon a motion to nonsuit.
The defendant has not pleaded the assumption of risk (Dorsett v. Mfg.Co., 131 N.C. 261; Bolden v. R. R., 123 N.C. 614), even if the danger to the intestate was so obvious in this instance, and under the facts and circumstances, as to require the application of that doctrine.
There was no error in the ruling of the court to which exception was taken.
Affirmed.
Cited: Norris v. Mills, post, 484; Reid v. Rees, 155 N.C. 233;Patterson v. Nichols, 157 N.C. 414; Mincey v. R. R., 161 N.C. 471; *Page 39 Steeley v. Lumber Co., 165 N.C. 34; Ainsley v. Lumber Co., ib., 126; Tatev. Mirror Co., ib., 280; Lloyd v. R. R., 166 N.C. 37; Cochran v. MillsCo., 169 N.C. 61; Lynch v. Veneer Co., ib., 172; Gregory v. Oil Co., ib., 457; Deligny v. Furniture Co., 170 N.C. 202; Wooten v. Holleman,171 N.C. 464; Taylor v. Lumber Co., 173 N.C. 117.
(51)