On 6 March, 1909, the plaintiff, who had been employed in the washroom of the defendant's laundry for four years, was engaged by the defendant as repair man, repairing defendant's machinery. He had been at this work about two weeks, when he was directed to extend a shaft so that another machine might be put in. In order to extend the shaft, it was necessary for the plaintiff to stop that part of the machinery, and that was done by throwing off the belt which connected it with the main shaft. This belt was usually thrown with a pole, but was put on by hand.
The shaft which was being extended was suspended from the ceiling. It was about 10 or 12 feet from the floor and 2 feet from the wall. Where the end went into the hangers there was a collar, which was kept tight by a set-screw which projected below the shaft about 4 inches. The set-screw *Page 322 
was close to the hanger and 12 or 14 inches away from the pulley on which the belt ran. After the plaintiff had made the extension, he undertook to put the belt on to see whether the shaft would run right. For the purpose of getting to the shaft to put the belt on the pulley, there was provided a ladder with hooks on it so that it could be hung over the shaft. And when used in this way, a person putting on (409) the belt would be working with his fact towards the shafting and the set-screw. The plaintiff, instead of hanging the ladder over the shafting, leaned it against the wall, on the side of the pulley where the set-screw was, so that in climbing up he had his back to the shaft and the screw, and a space of about 2 feet between the shaft and the wall in which to work.
As the plaintiff was climbing the ladder, and reaching over to pull the belt on the pulley, the set-screw caught in the back of the collar of his overalls, and he was thrown around the revolving shaft and injured. There was evidence that the hooks on the ladder were for the purpose of hanging over the shaft, to oil, the machinery when not in motion, and that in the performance of the duty imposed on the plaintiff it was necessary to rest the ladder against the wall.
There was no evidence of any defect in the ladder. No shifter was used by the defendant, and there was no evidence that a shifter was in general use for putting on and off belts at pulleys located as was the one at which the plaintiff was injured, or elsewhere. There was evidence that in modern laundries the set-screw is counter-sunk, and not permitted to project from the collar.
The following verdict was returned by the jury:
1. Was the plaintiff injured by the negligence of the defendant Nichols, as alleged in the complaint? Answer: Yes.
2. Did the plaintiff by his own negligence contribute to his injury? Answer: No.
3. What damage, if any, has the plaintiff sustained? Answer: $2,000.
His Honor charged the jury on the first issue as follows, omitting his statement of the contentions of the parties:
"In order for the plaintiff to recover in this action, he must satisfy you by the preponderance or greater weight of the evidence, first, that this defendant was negligent, as alleged, and the plaintiff must satisfy you that he was injured, and that the negligence of the defendant was the proximate cause of his injury. If he fails to satisfy you in any one of these propositions, then he would not be entitled to recover.
"Now, what is negligence? Negligence is the failure to exercise (410) such care, prudence, and caution, under all of the circumstances surrounding the situation, as an ordinarily careful, prudent, and cautious man would be expected to use and exercise under the *Page 323 
circumstances. It is the failure to exercise such care and the failure to do something that an ordinarily careful, prudent, and cautious man would be expected to do under the circumstances, or it is the doing of something that an ordinarily cautious, careful, and prudent man would not be expected to do under all the circumstances that existed, surrounding the case. So it is the failure to use proper care under the circumstances, by the doing or the omission of some act that a reasonably prudent, careful, and cautious man would be expected to do.
"If the jury find by the greater weight of the evidence that the defendant, James J. Nichols, provided for the plaintiff a ladder to stand on while putting on the belt; that the putting on of this belt was a part of the duty of the plaintiff while engaged in the service of the defendant; that this ladder was the only appliance furnished by the defendant upon which to stand while putting on the belt, and that the ladder was a reasonably safe appliance to use for the purpose of putting on the belt; that it was necessary for him to use the ladder while in the performance of his duty; and that the defendant was negligent in not supplying the plaintiff with a safer appliance on which to stand while in the performance of his duty, and that such negligence was the proximate cause of the injury to the plaintiff, the jury will answer the first issue `Yes.'
"If the jury find by the greater weight of the evidence that the defendant, James J. Nichols, did not equip his plant at the place where the plaintiff was changing the belt with a shifter and idler; that such shifter and idler would have been a safe appliance and suitable for the purpose of changing the belt; that the putting on and off of the belt without such shifter and idler was dangerous and uselessly dangerous to the plaintiff; that it was uselessly dangerous to require the plaintiff to put on and off this belt with a stick while standing on a ladder; that the defendant was negligent in not supplying his plant at this place with a shifter and idler, and that such negligence was the proximate cause of the injury to the plaintiff, the jury will answer the (411) first issue `Yes.'
"But if you find that the defendant did provide proper appliances for the purpose of putting on and taking off this belt, and that the stick provided there for taking off the belt was a suitable and reasonably safe appliance for taking it off, and such as was in general use in plants and places of this kind for removing belts, and that the belt could have been put on by the use of this ladder in a proper manner, by standing it at the proper place, as the defendant contends, by pushing on the belt, that that was a reasonably safe and suitable way and appliance there for putting on and taking off the belt, then you would answer the first issue of negligence `No'; otherwise you would answer it `Yes.'
"Now, if you find by the greater weight of the evidence that there *Page 324 
was a set-screw projecting about an inch from one of the shafts; that it was necessary for the plaintiff in the discharge of his duty to work in close proximity to this set-screw; that had the set-screw been countersunk, as described by the witness, it would not have been dangerous; that in the exercise of reasonable care it was the duty of the defendant to counter-sink this set-screw; that it was dangerous for the plaintiff to perform his duty as he was required to perform it while this set-screw was projecting from the shaft, as described by the witness, and that it was negligent in the defendant to require the plaintiff to work in close proximity to the projecting set-screw, and that such negligence was the proximate cause of the injury to the plaintiff, the jury will answer the first issue `Yes.'
"I charge you further, gentlemen of the jury, that the law did not require the defendant to do more than to exercise reasonable care to provide reasonably safe machinery and appliances, and the defendant was not required to adopt the latest appliances or machinery, but only to use that which was in general use in places of like kind and character. And if the jury shall find from the evidence that shafting with projecting set-screws was in general use in steam laundries of the kind and character the defendant was operating, the use of shafting with a projecting set-screw by the defendant would not be negligence, and the (412) jury should answer the first issue `No.'
"The defendant Nichols was not required to use a shaft with a sunken set-screw merely because such shafts were put upon the market and were being used and approved by others, and if the jury shall find from the evidence that machinery such as was being used by the defendant was in general use in other laundries, the use of such machinery with a projecting set-screw would not be negligence, and the jury should answer the first issue `No.'
"That if the jury shall find from the evidence that a shaft collar with a projecting screw such as was being used by the defendant Nichols was in common use, and that the shaft which he was using was of the kind that was being used in other laundries, the use of a shaft with a projecting screw would not constitute negligence on the part of the defendant, and the jury should answer the first issue `No.'
The defendant excepted to the different parts of the charge instructing the jury how the issue should be answered.
At the conclusion of the evidence the defendant moved for judgment of nonsuit, which was overruled, and the defendant excepted.
There was a judgment upon the verdict, and the defendant appealed.
The motion for judgment of nonsuit was properly overruled.
There was evidence for the consideration of the jury that the place where the plaintiff was required to perform his duty was not, under all the circumstances, reasonably safe, and that this was the cause of the plaintiff's injury, and if so, there was evidence of negligence.
The absence of a shifter, the presence of a projecting set-screw, the fact that a ladder had to be used, that the ladder had to be set against the wall, that the plaintiff had to go up the ladder in a space of 2 feet between the shaft and the wall, with his back to the screw, and had to reach over the pulley to put on the belt while the machinery (413) was in motion, are all circumstances, if found to exist, which enter into the question of a reasonably safe place.
We are also of opinion that his Honor correctly charged the jury on the second issue that, "Before you can answer the second issue `Yes,' you must be satisfied by the greater weight of the evidence that the plaintiff knew the danger which he was incurring or in the exercise of reasonable care could have known it, and that the work required of him by the defendant was obviously so dangerous that a man of reasonable prudence would not have engaged in it, or that in the performance of his work he did not exercise reasonable care for his own safety. Unless the jury so find, that the plaintiff was negligent as herein stated, you will answer the second issue `No,'" and that he could not, as a matter of law, direct the jury to answer the second issue "Yes."
We think, however, there is error in the instructions on the first issue which entitles the defendant to a new trial. When the charge on the first issue is considered as a whole, there are inconsistent directions to the jury, which must have left them in doubt as to a correct finding upon the issue.
To illustrate: His Honor charged the jury to answer the first issue "Yes," if they found that the defendant was negligent in not supplying the plaintiff with a safer appliance on which to stand while in the performance of his duty, and to answer it "No" if they found that a collar with a projecting screw was in common use. Suppose the jury found both facts to exist, how should the issue be answered?
When several acts of negligence are relied on by the plaintiff and there is evidence to support them, it is proper to submit separate charges as to each, presenting the contentions of the plaintiff, upon which the issue of negligence may be answered in the affirmative, and telling the jury that if they do not find the facts as contended, that the defendant would not be negligent in that respect.
The charge upon the use of the ladder as a safety appliance is not free from doubt. If by proper construction it was intended (414) *Page 326 
to leave to the jury the question of a defect in the ladder, we would hold it erroneous, because no evidence of such defect was introduced; but we think a fair interpretation of the language leads to the conclusion that his Honor was speaking of the ladder as an appliance, and of its safety for the purpose for which it was being used. We also think there was error in the charge as to the use of a shifter, upon the ground that there was no evidence to support it.
It is the duty of the employer, "where the machinery is more or less complicated, and more especially when driven by mechanical power, to provide for his employees, in the exercise of proper care, a reasonably safe place to work, and to supply them with machinery, implements, and appliances reasonably safe and suitable for the work in which they are engaged, and such as are approved and in general use in plants and places of like kind and character; and an employer is also required to keep such machinery in such condition as far as this can be done in the exercise of proper care and diligence. Witsell v. R. R., 120 N.C. 557; Marks v.Cotton Mills, 135 N.C. 287." Hicks v. Manufacturing Co.,138 N.C. 326.
The rule is well stated by Justice Walker in West v. Tanning Co.,154 N.C. 47: "The master does not guarantee the safety of his servant while engaged in the discharge of his duties. He is not an insurer, and is not bound to furnish him an absolutely safe place to work in, but is required simply to use reasonable care and prudence in providing such a place. He is not bound to furnish the best-known machinery, implements, and appliances, but only such as are reasonably fit and safe and in general use. He meets the requirements of the law if, in the selection of machinery and appliances, he uses that degree of care which a man of ordinary prudence would use, having regard to his own safety, if he were supplying them for his own personal use. It is culpable negligence which makes the employer liable, not a mere error of judgment."
In determining whether the place is reasonably safe, evidence (415) as to the appliances used is competent, but if shown to be such as are approved and in general use, may not be conclusive, and it may be that in the absence of evidence that shifters were in general use, circumstances might arise in which it would be proper to submit the question of negligence to the jury upon proof that no shifter was used, as in cases where the employee is working at the machine and is required constantly, in the performance of his duty, to shift the belt; but these conditions do not exist here.
The plaintiff was injured at a pulley 10 or 12 feet from the floor, and there is no evidence that it was practicable to use a shifter at a pulley so located, or that one had ever been used in any plant for any purpose, or that any employee of the defendant, except the plaintiff, had ever *Page 327 
been required to touch the pulley, and the plaintiff does not show that he had done so, except when doing the work of extending the shaft, immediately before his injury.
In the absence of evidence, it was erroneous to submit this view of the case to the jury. Burton v. Manufacturing Co., 132 N.C. 17; Joines v.Johnson, 133 N.C. 487; Stewart v. Carpet Co., 138 N.C. 61.
There is also an exception to the charge on damages, which it is not necessary to consider; but we call attention to the fact that the rule as to the measure of damages stated in Wallace v. R. R., 104 N.C. 451, is full and comprehensive, and that elements of damage embraced therein, as to which no evidence is offered, should be eliminated. For the errors pointed out, there must be a
New trial.
Cited: Hoaglin v. Telegraph Co., 161 N.C. 399; Grocery Co. v. Taylor,162 N.C. 313; Ainsley v. Lumber Co., 165 N.C. 126; Ammons v. Mfg. Co.,ib., 452; Cochran v. Mills Co., 169 N.C. 61; Champion v. Daniel,170 N.C. 334; Wooten v. Holleman, 171 N.C. 464.
(416)