ZEB. COCHRAN v. YOUNG-HARTSELL MILLS COMPANY.

(Filed 5 May, 1915.)

**1. Electricity—Trials—Evidence—Nonsuit—Questions for Jury.**

Under the rule that the evidence should be considered in the light most favorable to the plaintiff on a motion to nonsuit, the motion should be denied upon evidence tending to show that the plaintiff was employed by the defendant to keep the machinery of its mill in operation, which was run by an electric motor, belts, shafting, etc., under the management and control of the defendant upon the inside of its mill; that the plaintiff was not an electrician and totally ignorant of the operation of the motor; that while replacing a belt, which had fallen from its pulley, according to a method customary and known to the defendant and which he had followed several years without injury, he was severely shocked and injured by catching hold of an iron pipe, which injury would not have resulted if a ground wire without his knowledge had not been removed from the motor.

**2. Electricity—Master and Servant—Duty of Master—Safe Place to Work—Trials—Evidence—Questions for Jury.**

It is the duty of the master to furnish his servant a reasonably safe place to do the work required of him in view of the dangerous nature of his employment, imposing a high degree of care when a dangerous instrumentality such as electricity is used; and where the employee receives a severe shock, resulting in serious injury to him, while in the discharge of his duties in the way usually adopted and sanctioned and approved by the employer, which shock was caused by the operation of an electric motor or its appliances used in operating the power plant at which he was working, and the employee was ignorant as to the operation of the machine and was not an electrician, his duty being to keep the belts and shafting in operation and in no wise relating to the operation of the motor itself, the facts are sufficient to take the case to the jury upon the issue of defendant's actionable negligence.

**3. Electricity—Master and Servant—Trials—Evidence—Res Ipsa Loquitur.**

Where there is evidence that the plaintiff, an employee of the defendant in the latter's mill operated by electricity, has received the injury complained of by catching hold of an iron pipe heavily charged with the current; that the plaintiff had neither knowledge of nor duty in connection with the electric motor or appliances, but that these were in the exclusive charge and control of the defendant; that the plaintiff was in the performance of his duties at the time in a manner known to and approved by the defendant, and which had been customary for years, without injurious result, and there being no evidence that the corporation furnishing the defendant with electricity had supplied a heavier voltage on the occasion than usual, the doctrine of *res ipsa loquitur* applies.

**4. Electricity—Master and Servant—Duty of Master—Instruction and Warnings—Trials—Evidence—Nonsuit.**

An employee of a power plant driven by electricity whose duty it is to see that the machinery is properly kept in operation, but is inexperienced and has no duty in connection with operating the motor itself, has a right to assume that his employer will not needlessly or negligently expose him to danger; and under the circumstances of this case it is held that the failure of the defendant to notify the plaintiff that a ground wire from the motor, used for protection and safety, had been removed, with evidence tending to show that it caused the electricity from the motor to escape into an iron pipe, resulting in the injury complained of, is sufficient to take the case to the jury, and upon a motion to nonsuit, evidence that the injury would likely have occurred if the ground wire had not been removed does not affect the question.

**5. Electricity — Master and Servant — Contributory Negligence—Evidence—Trials—Questions for Jury.**

Where there is evidence that an employee of an electrically driven plant received a shock to his injury from an iron pipe, while in the discharge of his duty in the usual manner, caused by a defect in the electric motor or appliances, with which he was unfamiliar and which it was no part of his duty to operate, and also evidence that before doing the act whereby he was injured he could first have shut off the current at the switch and prevented the injury, the issue of contributory negligence was properly left to the determination of the jury.

**6. Witnesses—Experts—Hypothetical Questions—Appeal and Error—Harmless Error.**

The questions asked expert witnesses in this case, supported by the evidence, are held proper; but if otherwise, the error was committed in appellant's favor, of which it cannot complain.

APPEAL by defendant from *Adams, J.,* at November Term, 1914, of CABARRUS.

This action was brought to recover damages for injuries alleged to have been caused by the defendant's negligence. Plaintiff was second hand in defendant's mill, and his duty was to keep the machinery running. An electric motor furnished the power, but he had nothing to do with it or the electric apparatus of any kind. The machines were run by shafts, belts, and pulleys. One of the belts broke about 12 o'clock at night on 19 September, 1913, and plaintiff mended it, and then, by means of cross-pieces nailed to a post, he got upon a sill, underneath which was the motor. In order to steady himself for the purpose of

replacing the belt on the pulley, he caught hold of an iron pipe, and was severely shocked and injured by the current of electricity; one of his legs had to be amputated, and his body was severely burned. There was a ground wire which belonged to the motor, but it had been removed without plaintiff's knowledge. He knew nothing about electricity, and did his work that night in the usual way, as he had done it many times before, and several times in the presence of the superintendent and overseer of the mill, one of them telling him to "keep the frames running and get off all the pounds you can; keep the belts on the pulleys and make the hands work; don't let them go to sleep." He received no instructions to do the work otherwise than he had been doing it, and doing it, too, with safety all the time for several years. He could have stopped the machinery, but it was not customary to do so, nor had he done so, or been told to do so.

Julius Yates testified: "I had been working with the Young-Hartsell Mill, but left there something like a week before 19 September, 1913; I worked at night with Mr. Cochran; my duties were oiling the spinning frame; I worked in the same room with Mr. Cochran; the motor was not stopped at any time, to my knowledge, only when it was lightning; I don't know of any notices around the mill or in that room at the time, informing people that the ground wire had been taken out; I had seen them put this belt on the pulley—I had done it myself." He then described the method of replacing a broken belt, and further testified: "This is the way that Mr. Cochran and I did it; the belt could not have been put on if the machinery was stopped; I don't think you could have moved the belt; I never tried it."

Clarence Price testified that "the pulley has to be operating while you are putting the belt on; it is impossible to put a belt on the pulley unless it is connected with the motor." He also stated that he had seen others put the belt on the pulley just like plaintiff had.

W. A. Honeycutt, after stating that he was an electrical engineer, and had worked as such in several mills, further testified: "My duty in all those mills was to see that all motors were repaired and running safely; I had charge of the motors and electricity in the mills; I worked for the Young-Hartsell Company six years; I quit this mill some seven or eight months before September, 1913; I helped to install the motor in the Young-Hartsell mill; the motor is 100 horse-power motor; one also at the end of the spinning room which I rebuilt; it was never very good from the start; there is a ground wire to all motors; the object of the ground wire is to lead the electricity to the earth; these ground wires are for the purpose of making the motors perfectly safe, and for protection; (witness is here shown a plat and says it represents about the way the motor was attached to the sill); this plat is a very good sketch of the motor."

The plaintiff testified: "I knew how to stop and start up that electric motor; when I wanted to stop the motor I knocked up a switch; I don't know why that stopped the motor; it is all boxed up; I don't know how it works; I guess the power is cut off; I didn't know the motor was out of fix; Bill Rainey claimed to be the electrician; I do not know anything about his attempting to fix the motor; I was there at night every minute; I do not know that the machinery stopped for about three hours that night; the motor never would stop; I didn't know where the ground wire was; one morning when I was lying in bed I heard them talking about it; they said if the ground wire hadn't been off I could not have been hurt; that's how I learned the ground wire was off; I had been in the mill four years, and could not swear which was the ground wire, if the wire was open to view; I didn't see it; there was a whole bunch of wires there; I didn't know where it was; I do not know anything about it; I didn't see the wire; I know, I didn't see any wire; I didn't know there was anything at all the matter with the motor; Rainey had gone there to fix it; I do not know anything about him fixing the motor; he never worked on the motor for me; there may have been things done in the daylight I didn't know about."

Defendant, at the close of the evidence, moved for judgment of non-suit. The motion was refused, and defendant excepted. The jury found that the plaintiff's injuries were caused by defendant's negligence; that he was not guilty of contributory negligence, and assessed his damages at $5,000. Judgment was entered upon the verdict, and defendant appealed.

*M. H. Caldwell and J. W. Keerans for plaintiff.*
*Wilson & Ferguson and L. F. Hartsell for defendant.*

WALKER, J., after stating the case: It is our duty, in construing evidence on a motion to nonsuit, to view it most favorably for the plaintiff, and when thus considered, if there is any evidence to sustain the charge of negligence in this case, the motion necessarily fails. We not only think there is some evidence of such negligence, but that, taken as an entirety, the evidence strongly supports the verdict. A simple narrative of the facts will make this clear. The plaintiff had been engaged in running the machinery at this mill for several years. When a belt dropped from the pulley he had always replaced it in the same way that he did on this occasion, when he was injured, that is, by climbing the improvised ladder described by him as being made of cross-pieces nailed to a post, and getting upon the sill, which was just above the motor and rested upon it. Then he stood and steadied himself by grasping an iron pipe overhead with the left hand, and with the other hand replacing the belt on the pulley. He had done this repeatedly without injury to him-

self, and it was the method he was directed to use by his superiors, and often was done in their immediate presence and in full view of them. The jury have acquitted him of contributory negligence, and we think properly, as we can see no evidence of carelessness on his part, though the court submitted the question to the jury under fair and correct instructions, at least to the defendant. The only question then is, whether there was evidence of defendant's negligence. It appeared, and was, in fact, admitted, that the electric motor had a ground wire, which is always used with such motors "for protection and safety," and for the purpose of conducting the current to the ground. It was intended, it seems, or the jury might have so found, to prevent just such horrible accidents as this one, and if it be conceded that there was no evidence that the motor itself was defective, it still remains that an accident has occurred, which was unusual, and which did not occur when the ground wire was there and when care was used by the defendant. The jury had the right to infer that it was due to the absence of the ground wire. We do not mean to say that this was the only conclusion to be drawn from the evidence, but it surely was one of the legitimate inferences, and if so, it defeats the motion for a nonsuit. The only contention that suggests the opposite conclusion is one based upon the answer of an expert witness on cross-examination, when he said that the pipe might have become "alive," that is, as we understand it, charged with electricity, even if the ground wire was attached to the motor and the latter was in good condition, it depending upon the condition of the ground; for if it was damp, there would be no shock, but if dry and the pipe was a better "ground," there would be a shock, and the person handling it might get as much as 550, 600, 700, or 800 volts, regardless of the presence of the ground wire or the condition of the motor. But if this be so, defendant is then confronted with the principle that it would be evidence of negligence to permit such a condition of danger to exist, when its duty was to furnish a reasonably safe place for its employee to do his work, and especially without giving him some warning of the danger, so that he could avoid it, if possible. We have defined the master's duty, in this respect, to his servant in numerous cases: *Marks v. Cotton Mills,* 135 N. C., 290; *Patterson v. Nichols,* 157 N. C., 407; *Pigford v. R. R.,* 160 N. C., 93; *West v. Tanning Co.,* 154 N. C., 48; *Tate v. Mirror Co.,* 165 N. C., 273. We have held in a number of cases what is the measure of the master's duty towards his servant. Thus we said in *Steele v. Grant,* 166 N. C., 635, that "The duty of the master to provide reasonably safe tools, machinery, and place to work does not go to the extent of a guarantee of safety to the employee, but does require that reasonable care and precaution be taken to secure safety, and this obligation, which is positive and primary, cannot be avoided by a delegation of it to others for its performance. The master's duty, though,

is discharged if he does exercise reasonable care in furnishing suitable and adequate machinery and apparatus to the servant, with a reasonably safe place and structures in and about which to perform the work, and in keeping and maintaining them in such condition as to afford reasonable protection to the servant against injury. *R. R. v. Herbert,* 116 U. S., 642; *Gardner v. R. R.,* 150 U. S., 349; *R. R. v. Baugh,* 149 U. S., 368; *Steamship Co. v. Merchant,* 133 U. S., 375. This undertaking on the part of the master is implied from the contract of hiring. *Hough v. R. R.,* 100 U. S., 213. The rule was stated and applied in *Mincey v. R. R.,* 161 N. C., 467, citing the above authorities, and it has been frequently recognized in many other cases. The difficulty is not in the expression of the principle, but in the application of it to any given statement of facts. But this case does not present any such difficulty, as the facts are simple and practically uncontroverted." And so we say here, that this case is free from any difficulty in applying this elementary rule. The facts are simple and practically undisputed. There must have been a defect in the apparatus somewhere, either in the absence of a ground wire or in the electric motor itself, or in the general plan of construction of the complete machine, else the current would not have surcharged the pipe with electricity, making it a dangerous and deadly piece of the machinery for plaintiff, while performing, in the usual manner, the work assigned to him; and even if this was unavoidable, then it was plainly defendant's duty to warn him of this danger, so as to put him on his guard. The servant has the right to assume that his master will not needlessly or negligently expose him to danger. *Mercer v. R. R.,* 154 N. C., 399; *Britt v. R. R.,* 144 N. C., 253. "If an occupation, attended with danger, can be prosecuted by proper precaution without harmful results, such precaution must be taken, or liability for injuries will follow if they ensue; and if laborers, engaged in such occupation, are left by their employers in ignorance of the dangers incurred, and suffer in consequence, the employers are chargeable for their injuries." *Wood v. McCabe,* 157 N. C., 457. "Generally speaking, an employer is bound to warn and instruct his employee concerning dangers known to him, or which he should know in the exercise of reasonable care for their safety, and which are unknown to them, or are undiscoverable by them in the exercise of such ordinary and reasonable care as in their situation they may be expected and required to take for their own safety, or concerning such dangers as are not probably appreciated by them, by reason of their lack of experience, their youth, or through general incompetency or ignorance; and unless the servant is so warned or instructed, he does not assume the risk of such dangers; but if he receives an injury without fault on his part, in consequence of not having received a suitable warning or instruction, the master is bound to indemnify him therefor." Thompson on Negligence,

sec. 4055; *Norris v. Mills,* 154 N. C., 474. There was evidence of a neglect of duty by the defendant in both respects, especially when it is considered favorably for the plaintiff, as it should be, and it was for the jury to say what were the facts. But as plaintiff's evidence made out at least a *prima facie* case, the nonsuit was properly disallowed. We have recently so fully discussed the doctrine of *res ipsa loquitur* as applicable to cases of this kind that it would seem to be unnecessary to add anything to what has already been said upon the subject. In *Shaw v. N. C. Public-Service Corporation* (this defendant), 168 N. C., 611, we reviewed the authorities, and thus stated the principle: "When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have control of it use the proper care, it furnishes evidence, in the absence of explanation by the defendant, that the accident arose from want of such care," citing several cases, and among them, *Ridge v. R. R.,* 167 N. C., 510. This rule of the law has been frequently applied to cases involving negligence in the management of electrical machines and appliances, as will appear by reference to *Haynes v. Gas Co.,* 114 N. C., 203; *Mitchell v. Electric Co.,* 129 N. C., 169; *Turner v. Power Co.,* 154 N. C., 131; *Harrington v. Wadesboro,* 153 N. C., 437; *Houston v. Traction Co.,* 155 N. C., 4; *Starr v. Telephone Co.,* 156 N. C., 435; *Hicks v. Telegraph Co.,* 157 N. C., 519; *Ferrell v. Cotton Mills,* 157 N. C., 528; *Benton v. Public-Service Corporation* (this defendant), 165 N. C., 354, and in some of these cases the defendants were held to be liable where the negligence was not as pronounced, or as clear, as it is in this case. It is not suggested that the fault was due to the electric company in supplying too strong a current or more voltage than the defendant's contract called for, even if this would tend to exonerate defendant. The fault was on the inside. The plaintiff knew nothing about the motor or its accessories, whether they were in order or not, but the defendant did know, or should have known by the exercise of proper care. We require a high degree of care in the use of such a deadly agency as electricity. The Court said in *Mitchell's case, supra,* and approved in *Ferrell's case* and *Shaw's case, supra:* "In behalf of human life, and the safety of mankind generally, it behooves those who would profit by the use of this subtle and violent element of nature to exercise the greatest degree of care and constant vigilance in inspecting and maintaining the wires in perfect condition."

Whether it was negligence on the part of the plaintiff, that is, contributory negligence, not to have shut off the current at the switch before going upon the sill and grabbing the pipe, was plainly a question for the jury, and it was submitted to them with proper instructions. In substance and in principle the case is not unlike *Shaw v. N. C. Public-Service Corporation* (this same defendant), 168 N. C., 611.

The questions to the expert were properly framed and were supported by evidence. *Summerlin v. R. R.*, 133 N. C., 554; *Parrish v. R. R.*, 146 N. C., 125; *Shaw v. N. C. Public-Service Corporation, supra.* Besides, it appears that upon striking a general balance the advantage of all the questions and answers was largely in favor of defendant. If there had been error, no harm would have resulted to defendant.

A careful review of the facts constrains us to sustain the judgment.

No error.