WILL WOOTEN v. CHARLES E. HOLLEMAN AND JAMES W. DUNNEGAN.

(Filed 12 April, 1916.)

**1. Master and Servant—Safe Place to Work—Duty of Master—Rule of the Prudent Man.**

The master is not held to the liability of an insurer or guarantor of his servant's safety under the rule that it is his duty to furnish the servant a safe place to do the work required of him, but only to exercise ordinary care to provide a place where the servant can do the work with reasonable safety.

**2. Same—Trials—Instructions.**

A requested instruction, in an action for damages for failure of the defendant to furnish his servant a safe place to work, alleged to have resulted in the injury complained of, that leaves out of consideration the negligence of the defendant under the rule of the prudent man, and makes his liability that of an insurer, is properly refused.

**3. Same—Concurrent Negligence—Independent Contractors.**

The rule holding the master liable in damages to his servant when the negligence of both concur in inflicting the injury on the latter complained of, depends for its application upon the fact of the master's negligence, either directly or through his subcontractor, and a requested prayer for instruction tendered by the plaintiff which precludes this inquiry upon the evidence is properly refused.

**4. Appeal and Error—Trials—Requested Instructions—Issues.**

It is not erroneous for the trial judge to refuse special requests for instruction not addressed to the issues.

WOOTEN *v.* HOLLEMAN.

APPEAL ·by plaintiff from *Cline, J.,* at September Term, 1915, of FORSYTH.

Civil action to recover damages for personal injuries alleged to have been caused by the negligence of the defendant.

The defendant James W. Dunnegan, a building contractor, was employed by his codefendant, Charles E. Holleman, to build a house for him, which was to be a turn-key job. In order to do a part of the work it became necessary to erect scaffolding on one side of the house. Dunnegan employed plaintiff as one of his workmen and instructed him and M. L. Miller, another of his employees, to build the scaffold, and in doing so they failed to drive enough nails in the purlock by which the scaffold or framework was fastened to the window-jamb of the house, the other end being nailed to a post. They put but one nail in the purlock, which was pulled out by the weight, and this broke the scaffold, which fell at one end, where the plaintiff was working, and caused him to fall to the ground, thereby receiving the injuries for which he brings this action.

The plaintiff offered testimony to the effect that he did not build the scaffold, nor did he help to do so, and that he did not drive the nail in the purlock, though he stated that he could have discovered that there was only one nail in it had he examined it, and there was nothing to prevent him from examining it, as it was not hid, and if he had seen it he would have driven more nails into the purlock; but he did not examine, and simply did what he was told to do.

There was evidence for the defendants which tended to show that plaintiff was specially instructed to nail the scaffold securely, with a plenty of nails, as there would be considerable weight on it when the shingles were handed up and the men were on it at their work, and it was testified, further, that defendant Dunnegan gave instructions as to how it should be placed and nailed. There was also evidence tending to show that, as between the two defendants and the plaintiff and his co-employees, James W. Dunnegan was an independent contractor.

Upon the issues submitted to the jury, the following verdict was rendered:

1. Was the plaintiff injured by the negligence of the defendant J. W. Dunnegan, as alleged in the complaint? Answer: "No."

2. Was the said J. W. Dunnegan an independent contractor? Answer: . . . . . . . .

3. Was the plaintiff injured by the negligence of the defendant Charles E. Holleman, as alleged in the complaint? Answer: "No."

4. Did the plaintiff by his own negligence contribute to his injury, as alleged in the answer? Answer: . . . . . .

5. What damages, if any, is the plaintiff entitled to recover? Answer: . . . . . . . .

Judgment in favor of the defendant having been entered on the verdict, the plaintiff appealed to this Court.　.

*A. E. Holton and W. H. Beckerdite for plaintiff.*
*Jones & Clement, Hastings & Whicker, S. J. Bennett, and Louis M. Swink for defendants.*

WALKER, J., after stating the case:　The exceptions in this case were taken to the refusal of the court to give two requests for instructions, and to portions of the charge.　The instructions asked by the plaintiff are too narrow, as they omit the important element as to whether the failure of the defendants to furnish a safe place in which the plaintiff could perform his work was due to their negligence.　The exceptions are predicated generally upon the assumption that the master must furnish a reasonably safe place to his servant for the doing of his work and reasonably safe appliances, in the sense that he is an insurer or guarantor of the servant's safety, whereas the law requires only that he should exercise proper care in the discharge of this duty to his servant. He cannot delegate this primary duty to another without being liable for his negligence if injury results; but if this primary duty is assigned to another by him, and he still exercises due care and supervision in the performance of it, the law will not hold him responsible for any injurious result, the measure of his duty being the exercise of ordinary care in furnishing a place where his servant can work with reasonable safety.

It is true, as contended by the plaintiff, that where the negligence of the master and a fellow-servant concur in producing an injury to an employee, the latter, being himself free from blame, can recover damages for the injury from either or both; but this is because the master, as well as the fellow-servant, was negligent; and if there was no negligence on the part of the master, although the fellow-servant was negligent, the concurrent elements of liability do not exist.　There must be the coexistence of the negligence of the master and that of fellow-servant. Where this is the case the law will not undertake to apportion the negligence, but holds the master liable because he contributed to produce the injury by his failure to exercise due and proper care.

We said in *Marks v. Cotton Mills,* 135 N. C., at p. 290, it is the negligence of the employer in not providing for his employee a reasonably safe place in which to work that makes him liable for any resultant injury to his employee who is himself free from fault; and referring later to this rule, we said in the same case, at marg. p. 291: "The rule which calls for the care of the prudent man is in such cases the best and safest one for adoption.　It is perfectly just to the employee and not unfair to his employer, and is but the outgrowth of the elementary

principle that the employee, with certain statutory exceptions, assumes the ordinary risks and perils of the service in which he is engaged, but not the risk of his employer's negligence. When any injury to him results from one of the ordinary risks or perils of the service, it is the misfortune of the employee, and he must bear the loss, it being *damnum absque injuria;* but the employer must take care that ordinary risks and perils of the employment are not increased by reason of any omission on his part to provide for the safety of his employees. To the extent that he fails in this plain duty he must answer in damages to his employee for any injuries the latter may sustain which are proximately caused by his negligence." We have approved that case and applied the same doctrine frequently since its decision. *Patterson v. Nichols,* 157 N. C., 407; *Pigford v. R. R.,* 160 N. C., 93; *West v. Tanning Co.,* 154 N. C., 48; *Tate v. Mirror Co.,* 165 N. C., 273; *Steele v. Grant,* 166 N. C., 635, and more recently in *Cochran v. Mills Co.,* 169 N. C., 57, where, quoting from *Steele v. Grant, supra,* we said: "The duty of the master to provide reasonably safe tools, machinery, and places to work does not go to the extent of a guarantee of safety to the employee, but does require that reasonable care and precaution be taken to secure safety, and this obligation, which is positive and primary, cannot be avoided by a delegation of it to others for its performance. The master's duty, though, is discharged if he does exercise reasonable care in furnishing suitable and adequate machinery and apparatus to the servant, with a reasonably safe place and structures in and about which to perform the work, and in keeping and maintaining them in such condition as to afford reasonable protection to the servant against injury," citing *R. R. v. Herbert,* 116 U. S., 642; *Gardner v. R. R.,* 150 U. S., 349; *R. R. v. Baugh,* 149 U. S., 368. A late decision upon the question is very applicable to the facts of this case. In *Gregory v. Oil Co.,* 169 N. C., 454, *Justice Hoke* says: "It is urged for the appellant that the duty of the master to provide his employee with a safe place to work is 'primary, absolute, and nondelegable,' and that for a failure in this respect the master was guilty of negligence, and, on the testimony, the jury could well find that there was concurrent negligence of the master and the employees who threw the bale on the platform. The position is sound in so far as it states the duty of the master to be primary and nondelegable; but it is not 'absolute' in the sense that the employer of labor is ever an insurer of the safety of his laborers. He is held to the exercise of proper care in providing a safe place to work, and this, as a general rule, is the measure of his obligation," citing *Ainsley v. Lumber Co.,* 165 N. C., 122; *West v. Tanning Co., supra.* In *Gregory v. Oil Co., supra,* it is further said that where there is joint or concurring negligence of the master and a fellow-servant which produces the injury, the master is liable if the injured servant is free from fault; but in order to a

proper application of the principle, the negligence of the employer must be first established. Both of the instructions requested by the plaintiff ignore this essential element of liability.

The most important of the facts to be found was the negligence of the defendants, and under neither of the defendants' prayers would that fact have been passed upon by the jury. The form of the two prayers for instructions is also objectionable, as they are not addressed to any specific issue. *Whitsell v. R. R.,* 120 N. C., 557; *Earnhardt v. Clement,* 137 N. C., 93; *Satterthwaite v. Goodyear, ibid.,* 302; *Lynch v. Veneer Co.,* 169 N. C., 173.

The case of *Gregory v. Oil Co., supra,* sufficiently answers all objections to the charge of the court.

The duty of constant supervision and the exercise of ordinary care by the defendants as a condition of immunity from liability on their part is a pervasive feature of the instructions which were given by the court to the jury, and they have found the essential facts against the plaintiff's contention. Not only did the presiding judge give prominence to the necessity of such care on the part of the employer as is required by applying the rule of the prudent man to the facts and circumstances in order to exonerate the master, but he kept it constantly before the jury as a fact to be found by them before there could be any liability of the defendants, and he gave the plaintiff, at the same time, the full benefit of the law as previously declared by this Court, following our decisions with painstaking care and close adherence.

It is not to be overlooked that there was evidence that plaintiff was associated with Miller in nailing the scaffold, and was himself responsible for the injury to himself as the result of his neglect to properly fasten the purlock to the jamb of the window, and, further, that he afterwards admitted that the injury was due to his own fault in thus failing to take proper precaution for his own safety. This, though it does not affect the legal aspect of the matter, may have had great weight with the jury.

We have carefully examined the case, and find no error in the record.

No error.