E. F. WITSELL v. WEST ASHEVILLE AND SULPHUR SPRINGS
RAILWAY COMPANY.

*Action for Damages—Street Railways—Injury to Passenger—
Evidence—Declaration of Employee of Defendant as to Con-
dition of Track, Car, &c.—Res Gestae—Negligence—Safe
Appliances—Instructions.*

1. In the trial of an action for injuries caused by the derailing of a street
   car because of excessive speed in going down a steep grade, state-
   ments made to a witness by the motorman of the street railway
   company, immediately preceding the accident, as to the condition of
   the track and the want of sand and as to the car being overloaded
   and behind time, were competent as part of the *res gestae* and also
   as fixing the company with knowledge of facts requiring a greater
   degree of care and providence than ordinary.

2. Inasmuch as the jury under the practice in this State responds to issues
   submitted and do not find a general verdict, it is not error, in the
   trial of an action involving several issues, to refuse to charge that,
   on certain showing, the "plaintiff cannot recover."

3. An exception "to the giving of the special instructions prayed for, &c.,
   from one to fourteen, both inclusive," is a specific exception to
   each and every one of the fourteen special instructions so num-
   bered, and is as available as if a separate exception was made
   *seriatim* to each instruction.

4. In the trial of an action for injuries caused by the alleged negligence
   of a street railway company in not providing proper appliances,
   &c., it was error to charge that a street-car company must provide
   "all known and approved machinery necessary to protect its pas-
   sengers," the true rule being that it is negligence not to adopt and
   use all approved appliances which are in general use and neces-
   sary for the safety of passengers.

CIVIL ACTION, tried before *Bryan, J.*, and a jury, at De-
cember Term, 1896, of BUNCOMBE Superior Court, for dam-
ages sustained by the plaintiff as a passenger on the street
railway, which, it was alleged, negligently permitted its
car to run down hill at a rapid speed and without proper
appliances, whereby the car was derailed and the plaintiff
injured. The usual issues as to negligence, contributory

negligence and amount of damages were submitted.   Verdict and judgment for the plaintiff.   Appeal by the defendant, who assigned the following errors: 1.  To the admission by the court of the testimony of J. D. Davis, to which objection and exception were made at the trial.   2.  To the refusal of the court to give the first and fourth special instructions requested by the defendant.   3.  To the modification or qualification of the second instruction prayed for by the defendant.   4.  To the giving of the special instructions prayed for by the plaintiff, from one to fourteen, both inclusive.   5.  To the judgment of the court.

Messrs. *L. M. Bourne* and *T. H. Cobb*, for plaintiff.
Messrs. *Merrimon & Merrimon* and *Davidson & Jones*, for defendant (appellant).

CLARK, J. :  The statements and declarations of the motorman, made to plaintiff just preceding the accident as to the condition of the track, as to his not having sand and the car being late and overloaded, and the rapidity of the speed, were competent as part of the *res gestae* and also as fixing the company with knowledge of facts requiring a greater degree of care and prudence than ordinary.   4 Thompson Corp., Sections 4913, 4914; Morawetz Corp., Section 540a.

Each of the four special instructions asked by the defendant concludes by asking the court to instruct the jury that the "plaintiff cannot recover."   As the jury now respond to issues and do not find a general verdict, it was not error to refuse these prayers, which would not aid the jury to answer the issues and might confuse them.   *Bottoms* v. *Railroad*, 109 N. C., 72; *Farrell* v. *Railroad*, 102 N. C., 390; *McDonald* v. *Carson*, 94 N. C., 497.   If a prayer is in part erroneous, the court may decline it.   The Judge is

WITSELL v. RAILWAY COMPANY.

not called upon to sift out the sound part and give it. *State* v. *Melton*, at this term. The plaintiff, having asked fourteen instructions, each one numbered and all of which were given, the defendant excepted "to the giving of the special instructions prayed for by plaintiffs, from one to fourteen, both inclusive." We cannot concur with the defendant's counsel that this is objectionable as a "broad-side exception." It is a specific exception to each and every one of the fourteen special instructions. It puts the judge on notice to send up the evidence applicable to each, and the opposite party knows that each of the fourteen propositions of law contained in those prayers will be challenged here. When an exception is made "to the charge as given," this, by repeated decisions of this court, is invalid except when the charge contains only one proposition of law. When it contains more than one, the appellant must point out each objectionable proposition of law in the charge by an exception embracing it, and the Statute gives him ten days after the trial to scrutinize the charge and make his exceptions. The record, as has been repeatedly said, should not be encumbered with any part of the charge or of the evidence which is not required to point out or throw light upon the matters excepted to. To permit a broadside exception "to the charge as given," would require all the evidence and all the charges in every case to be sent up, with great and needless addition to the costs, and would be unjust to the appellee, for it would give him no knowledge of what propositions of law would be called in question upon the appeal so that his counsel might prepare himself thereon. But *The Code* does not require refinements, and when prayers for instruction are asked and given, and the opposite party excepts, giving the numbers of the instructions excepted to, this is specific information to the appellee which would not be fuller if a separate exception was made *seriatim* to each instruction given.

The third instruction given at request of plaintiff. ''It is the duty of the defendant to provide its cars with all known and approved machinery necessary to protect its passengers from injury,'' is too broad and exacting. Many appliances and devices ''necessary to protect passengers from injury'' are not yet invented, and it is little short of requiring the use of them that the company shall adopt all such when invented as soon as ''known and approved.'' Many inventions are ''known and approved'' long before they come into general use, and to thus require common carriers to adopt the latest and best appliances is too harsh and unreasonable. Janney couplers, Miller platforms, air brakes, electric lighting for cars, and many other improvements were ''known and approved'' by some, and possibly by many people, before they came into general use. The rule as to the conduct of common carriers in managing transportation is thus stated by Burwell, J., in *Haynes* v. *Gas Co.*, 114 N. C., 203, 211: ''Passengers on railroad trains have a right to expect and require the exercise by the carrier of the utmost care, so far as human skill and foresight can go, for the reason that the neglect of duty in such cases is likely to result in great bodily harm, and sometimes death, to those who are compelled to use that means of conveyance.'' But this applies to the management and not to the kind of machinery and appliances to be furnished. In *Mason* v. *Railroad*, 111 N. C., 482, 487, it is said: ''It is not the duty of railway companies to furnish machinery of the very best varieties or to attach appliances of the latest and safest kinds, but it is culpable to use cars or engines of any particular pattern which an ordinary inspection would show to be defective;'' but this has reference to furnishing machinery and appliances when the complaint comes from an employee who has been injured. To draw the rule as to the machinery and appliances which

it is negligence not to furnish as to passengers is more diffi-
cult.   The rule laid down by his Honor is incorrect.   It
would discourage the building of new roads if every cor-
poration is held to so strict a rule that it must keep a look
out for improvements and inventions and, when one such is
"known and approved," that it is negligence to fail to buy
it.   Such rule is unreasonable and compliance with it im-
practicable.   The prompt introduction of so valuable and
much needed an improvement as the Janney coupler was
beyond the means of many corporations, and when the Act
of Congress made their use in Interstate commerce impera-
tive, a date was set years ahead for the Act to go into
operation.   The courts cannot act precipitately in such
matters.   Before it is negligence not to adopt improved
appliances or machinery there must something more ap-
pear than that they are "known" and "approved."   The
correct rule is more nearly this, "It is negligence not to
adopt and use all approved appliances which are in general
use and which are necessary for the safety of passengers."
To require an adoption by any particular defendant, before
such appliances have come into ordinary use, as soon as
"known and approved," is simply to say that each corpora-
tion must have the "latest and best."   The burden of looking
out and buying each new appliance is too great.   The rule
has also been thus stated, "It is the duty of the carrier to
furnish everything necessary to the security of their pas-
sengers which is reasonably consistent with the business of
the carrier."   2 Wood Railways, Section 301; or, "ap-
proved appliances in general use."   3 Elliott Railways,
Section 1224; or that "the carrier shall do all that human
care, vigilance and foresight can reasonably do, consistently
with the mode of conveyance and the practical operation of
the road."   *Fuller* v. *Talbott*, 23 Ill., 357.   "A company
cannot be required, for the sake of making travel upon their

road absolutely free from peril, to incur a degree of expense which would render the operation of the road impracticable. It would be unreasonable, for example, to hold that a road bed should be laid with ties of iron or cut stone, because in that way the danger arising from wooden ties, subject to decay, would be avoided, but, on the other hand, it is by no means unreasonable to hold that if wood ties are used they must be absolutely sound and roadworthy." *Railroad* v. *Thompson*, 56 Ill., 138, 142. The carrier must not be lacking in any appliances which sound rules require it should have, but it is not bound to use every means scientific skill might suggest to prevent accidents. *Steinway* v. *R. Co.*, 43 N. Y., 123. On English railways no railroad tracks are allowed to cross a public road on a grade, but they always cross either below or above it, and flagmen are stationed at short distances along the entire line and there are other precautions which add to the security of travel, but the expense of which few railroads in this country are yet able to bear. If an appliance is such that the railroads should have it, the poverty of the company is no sufficient excuse for not having it. But whether the corporation is negligent not to have it, depends not upon the bare fact that its use would conduce to greater security, as the expensive appliances above mentioned, nor upon its being "known and approved" or "the latest and best," but the more reasonable and just rule is, as above stated, that the carrier must have "all approved appliances that are in general use and which are necessary for safety of passengers." In *Mason* v. *Railroad, supra*, it was declared that the time had then arrived when it was negligence not to have "self-couplers" and "air brakes" on passenger cars, but that it was too soon to hold it culpable negligence not to have such appliances on freight cars. The law is reasonable and just, alike to the carrier and the pas-

senger. It does not require the carrier to adopt each ap-
pliance as soon as "known and approved," nor will it jus-
tify the retention of old appliances when new and better
ones are in general use. The well known homely lines
roughly express the safest course:

> " Be not the first by whom the new is tried,
>   Nor yet the last to lay the old aside."

While the law does not require the adoption of the
"latest and best," self-interest will, in reasonable time,
bring all valuable improvements into general use, and then
the corporation which is not sufficiently progressive will be
moved by fear of liability for negligence from disregarding
the interests of the public.

It is not necessary to consider the other points raised by
the exceptions, as they may not arise, or may be presented
in a different form, on another trial. For error in granting
the third prayer for instruction there must be a new trial.

New Trial.