## W. M. AINSLEY, ADMINISTRATOR, v. JOHN L. ROPER LUMBER COMPANY.

(Filed 12 March, 1914.)

1. **Master and Servant—Safe Appliances—"Known, Approved," etc. —Further Duty of Master.**

An employer owes it as a duty to his employee working at machines driven by mechanical power and more or less dangerous and intricate, to supply him with appliances, etc., which are reasonably safe and suitable, and to exercise the care of a prudent man in looking after his safety; and this duty may not always be fully discharged by furnishing him such implements and appliances as are "known, approved, and in general use."

2. **Same — Trials — Evidence — Negligence — Knowledge Implied— Questions for Jury.**

While engaged in his duties in operating a power-driven lathing machine, the plaintiff's intestate was killed by a piece of timber flying back from the machine and striking him. The verdict established the fact that the machine causing the injury was "known, approved, and in general use," but there was further evidence tending to show that a large hood, a part of the machine, was placed over the saws for the purpose of preventing the timbers from thus flying back, and because of a large opening therein some of the timbers would oftentimes fly back, the danger from which could practically have been removed in a certain manner at a comparatively small expense and without lessening the efficiency of the machine: *Held*, this further evidence was sufficient upon the question of defendant's actionable negligence to be submitted to the jury; and, further, that the dents in the wall caused by the flying timbers before the injury, the length of time the machine had thus been used there, etc., were evidence sufficient upon the question of defendant's implied knowledge of the danger to the employee in thus working. The charge in this case is approved.

APPEAL by defendant from *Bragaw, J.*, at October Term, 1914, of BEAUFORT.

Civil action to recover damages for the alleged negligent killing of plaintiff's intestate.

It was proved that, on or about 4 August, 1912, the intestate, a boy of 14 years of age, was killed while operating a lathing machine, as employee of the defendant company; that this ma-

chine had two circular saws which revolved towards the oper-
ator; over the saws was a hood for the purpose of preventing.
sawdust and pieces of timber from being thrown back towards
the operator, and, to a certain extent, was efficient for the pur-
pose.   There was also an iron spring curving towards the saw,
1½ inches wide, designed primarily to hold the bolts of wood to ·
the guide or side boxing as same were moved onto the saws; that
this spring had also some effect in protecting the operator, but,
owing to its size, there was an opening left, and through this
pieces of timber were not infrequently hurled back with great
violence, threatening the safety of the employee, and that marks.
and dents on the wall, 20 feet back, made by these timbers, gave
evidence of this condition, and that it had been going on since
the machine had been in operation, for a good length of time,
and that the intestate was struck and killed by a piece of timber
thrown back in this manner.   There was testimony also to the
effect that, by making the spring slightly wider, as much as 5 or
6 inches, it would have closed the gap or opening and afforded
full protection to the operator, and that this could have been
done at very small expense and without in any way impairing
the efficiency of the machine.   There was evidence on the part
of the defendant, uncontradicted, so far as the record discloses,
that this was a good specimen of machine, of a type that was
known, approved, and in general use.

A motion to nonsuit, made in apt time, was overruled, and
defendant excepted.

In the course of his Honor's charge the jury were directed as
follows: "The only allegation of negligence in this case is the
use of this lathe machine with the spring not high enough to act
as an obstruction or guard to prevent the hurling back to and
through the front of the machine pieces of wood which might
be inside.   In this case I charge you that plaintiff has not
shown that the defendant has been negligent in failing to use a
machine such as was known, approved, and in general use in
mills of that kind at that time, and upon that question and alle-
gation you would not be justified in answering this first issue in
the plaintiff's favor. ·

"The plaintiff contends that after the defendant installed this machine, in its operation it hurled missiles out of the front, to the danger of the man or boy feeding it, before the injury to Ainsley, sufficiently frequent and for such a length of time for defendant to have known of this, or in the exercise of ordinary care to have learned it, and that in the face of this knowledge defendant continued to use it with the narrow spring, when it could have corrected it by using a wider spring and have thereby prevented missiles or slivers or pieces of wood from being thrown back through the front end, to the danger of the feeder of the machine.

"(I charge you that, unless you are satisfied by the greater weight of the evidence, the burden being upon the plaintiff, that this machine had, previous to the injury to Ainsley, thrown out missiles or pieces of wood with such force, frequency, and for a sufficient length of time prior to this injury to Ainsley, that defendant knew of it, or in the exercise of reasonable care and diligence could have known it, you should answer the first issue 'No.' The only evidence of negligence in this case, if any, to be considered by the jury upon the first issue is the failure of defendant to have a spring of additional width or height, and unless you find by the greater weight of the evidence that such spring would have prevented the injury, and that the defendant in the exercise of ordinary care ought to have provided the same, you are instructed to answer the first issue 'No.')"

To that part of the charge in parentheses the defendant excepts. This constitutes defendant's exception 7.

"It was not the duty of the defendant to furnish the best or most improved machine that could have been gotten or devised, but only such as was in general and approved use at the time, and the failure of defendant to have any particular appliances or devices on this machine is not actionable negligence. The basis of defendant's negligence in this case, if any, depends upon whether it exercised that degree of care which a reasonably prudent man would have exercised in the same situation, and this test is made if you are not satisfied from the evidence that the machine and appliances in question were such as were in general

and approved use at the time, or such as a reasonably prudent man in the same situation would have provided; and if you so find from the evidence, you would answer the first issue 'No.'

"If you find from the evidence, by its greater weight, that the defendant was negligent in the respect alleged, you must further find, before answering the first issue 'Yes,' that such negligence was proximate—that is, the real or moving cause of the injury. In other words, you must find from the evidence, by its greater weight, not only that this defendant was negligent in the manner alleged, but that the injury would not have occurred otherwise; and if you are not satisfied, then you are instructed to answer the first issue 'No.'

"(But if you are satisfied by the greater weight of the evidence that after defendant had installed this machine, in its operation it threw pieces of wood out of the front end next to the feeder, subjecting the one feeding it to danger from these flying missiles in the proper discharge of his duty, these pieces flying over the top of this spring, and you further find by the greater weight of the evidence that this could have been corrected and prevented by the use of a spring of sufficient width to obstruct and turn these flying pieces, and that this could have been done without impairing the efficiency of the machine or interfering with its work, and you should further find that the failure to use a wider spring under the circumstances was a failure to do what a reasonably prudent employer would have done under the circumstances, or that the continued use of this spring under such conditions was doing what a reasonably prudent employer would not have done, and you further find by the greater weight of the evidence that this was proximate cause of Ainsley's injury, you should answer the first issue 'Yes.')"

To this part of the charge defendant excepted.

There was verdict for plaintiff. Judgment on the verdict, and defendant excepted and appealed.

*Ward & Grimes* for plaintiff.
*A. D. McLean* and *W. B. Rodman, Jr.,* for defendant.

Hoke, J., after stating the case: It is the accepted rule in this State, applied in numerous decisions of the Court, that "an employer of labor, in the exercise of ordinary care, that care that a prudent man should use under like circumstances and charged with a like duty, must provide for his employees a reasonably safe place to do their work and supply them with machinery, implements, and appliances reasonably safe and suitable for the work in which they are engaged, and such as are known, approved, and in general use." *Kiger v. Scales Co.,* 162 N. C., 133'; *West v. Tanning Co.,* 154 N. C., 47; *Patterson v. Nichols,* 157 N. C., 406; *Blevins v. Cotton Mills,* 150 N. C., 493; *Pressly v. Yarn Mills,* 138 N. C., 410; *Marks v. Cotton Mills,* 135 N. C., 287; *Witsell v. Manufacturing Co.,* 120 N. C., 557.

There has been no occasion with us to make extended or critical reference to that portion of this obligation referring to implements and appliances which are "known, approved, and in general use," for in the causes in which the question has thus far appeared, the absence of such implements, etc., has been such as to permit the inference of negligence; the proximate cause of the alleged injury, and a perusal of the authorities cited, and many others of like kind, will disclose that this requirement, while peremptory in terms and effect, is in addition to the more general one of supplying appliances, etc., which are reasonably safe and suitable, and both are included in the general obligation on the employer to exercise the care of a prudent man in looking after the safety of his employees. Thus, in the recent case of *Kiger v. Scales Co., supra,* p. 136, the prevailing rule is stated by the Court as follows:

"It has been repeatedly held in this State that in the exercise of reasonable care employers of labor are required to provide for their employees a safe place to do their work, and appliances safe and suitable to do the work in which they are engaged. And as a feature of this obligation, in the operation of mills and other plants where the machinery is more or less complicated, such employers are held to the duty of supplying machinery and implements which are known, approved, and in general use."

And in *Marks v. Cotton Mills, Associate Justice Walker,* delivering the opinion, said: "The employer does not guarantee the safety of his employees. He is not bound to furnish them an absolutely safe place to work in, but is required simply to use reasonable care and prudence in providing such a place. He is not bound to furnish the best known machinery, implements, and appliances, but only such as are reasonably safe and fit and as are in general use. He meets the requirements of the law if in the selection of machinery and appliances he uses that degree of care which a man of ordinary prudence would use, having regard to his own safety, if he were supplying them for his own personal use. It is culpable negligence which makes the employer liable, not a mere error of judgment. . . . It is the negligence of the employer in not providing for his employees safe machinery and a reasonably safe place to work that renders him liable for any resulting injury to them, and this negligence consists in his failure to adopt and use all approved appliances which are in general use and necessary to the safety of the employees in the performance of their duties."

Speaking, then, further to this rule that an employer must furnish implements, etc., which are known, approved, and in general use, a fuller statement of the requirement is that where machinery is more or less complicated, and especially when driven by mechanical power, there must be supplied, for the employees, machinery, implements, and appliances which are "known, approved, and in general use by prudent and skillful employers and in well regulated concerns." From this we think it follows that an employer is not protected, as a conclusion of law, because he is operating a machine which is "known, approved, and in general use," but, although such a machine or appliance may have been procured, if its practical operation should disclose that employees are thereby subjected, not to the ordinary risks and dangers incident to their employment, but to obvious and unnecessary dangers which could be readily removed without destroying or seriously injuring the efficiency of the implement, such conditions, if known or if allowed to continue, might permit the inference of culpable negligence against the

employer; that he had not, in the particular instance, measured up to the standard of care imposed upon him by the law; a position upheld by many authoritative cases and by text-writers of approved excellence. *Tex., etc., Ry. v. Behymer,* 189 U. S., 468; *Wabash Ry. v. McDaniels,* 107 U. S., 454; *Wilson v. R. R.,* 29 R. I., 146; *Reichla v. Grueusfelder,* 52 Mo. App. Rep., 44; *Block Co. v. Gibson,* 160 Ind., 319; *R. R. v. Mugg,* 132 Ind., 168; *Gadszewski v. Barker,* 131 Wis., 494; *Niko Wila v. Interstate Iron Co.,* 103 Minn., 103; *Coin v. Lounge Co.,* 222 Mo., 488; 3 Labatt on Master and Servant (2d Ed.), sec. 940; in 1st Ed., sec. 44; 26 Cyc., p. 1108.

In the case of *Wabash Ry. v. McDaniels, Associate Justice Holmes,* speaking to this question, said: "What usually is done may be evidence of what ought to be done; but what ought to be done is fixed by a standard of reasonable prudence, whether it is usually complied with or not."

In *Reichla's case,* 52 Mo. App., *supra,* it was held, among other things: When fencing can be resorted to without inconvenience, and its absence renders the machinery unnecessarily dangerous, the existence of a practice to use the machinery without it will not prevent the inference of negligence." Speaking generally to the question in 26 Cyc., p. 1108, it is said: "While not conclusive on the question of negligence, evidence is generally admissible in an action for personal injuries to show whether or not the master's machinery, appliances, ways, and methods are such as are in ordinary and general use by others in the same business; but customary negligence, either on the part of himself or others, is no defense to the master," etc.

In Labatt, *supra,* the author refers to the correct statement of the rule we are discussing, as follows: "A doctrine which has been extensively applied may be enunciated thus: Where the only inference that can reasonably be drawn from the evidence is that the master conformed to the general usage of the average member of his profession or trade in respect to the adoption or retention of the instrumentality in question, he may be declared, as a matter of law, to have been in the exercise of due care. The language in which this doctrine is formulated or referred to

would, if taken literally, often convey the idea that the generality of the usage and the similarity of the business or establishment of which the usage is adduced as a standard of comparison are the only ·points to be considered, and that the manner in which that business or establishment is conducted and the character of the persons engaged in it are not material factors in the question to be determined.  But it is clear that, under the general principles of the law of negligence, these latter elements must be material, and that the test really propounded is not usage of any employers, however imprudent or unskillful, or of any concerns, however ill regulated, but the usage prevailing among prudent and skillful employers and in well regulated concerns."

The same general principle is involved and the doctrine indirectly approved in a line of well considered cases holding that a promise by an employer to make additions or structural changes in a machine required by the accepted standards of prudence will be as efficacious to repel the assumption of risk as a promise to repair, *Suchomel v. Maxwell,* 240 Ill., 231; *Barny Dumping Boat v. Clark,* 112 Fed., 920; *Homestake Mining Co. v. Fullerton,* p. 923, and the position is clearly recognized in the recent and well considered case of *Rogers v. Manufacturing Co.,* 157 N. C., 484.

The case at bar was submitted to the jury in the light of these general principles, and we find no valid reason for disturbing the results of the trial.  While it was proved that the machine in question was one that was "known, approved, and in general use," there were also facts in evidence tending to show "that in its practical operation the machine oftentimes would hurl these blocks or pieces of wood back towards the operator with tremendous force"—a constant menace of serious injury, and one of which had caused the intestate's death; that this had been going on for some time, and there were numerous dents made in the wooden wall 20 feet back of the workman, giving evidence of the force of the impact and of the continued existence of the condition complained of; and, further, that by broadening the iron spring to 5 or 6 inches, which could have been done at a

small cost and without impairing the usefulness of the machine, the defect could have been removed and the danger practically avoided. These facts, if accepted, permit the inference of negligence on the part of the employer, and justifies the conclusion reached by the jury.

In our opinion, the learned judge, in his carefully restricted charge, has laid down the correct rule for the guidance of the jury, and the judgment on the verdict is affirmed.

No error.