J. B. TAYLOR v. NEUSE LUMBER COMPANY.

(Filed 14 March, 1917.)

1. **Master and Servant—Safe Place to Work—Approved Instrumentalities—Negligence—Evidence.**

Upon evidence tending to show that the defendant had employed the plaintiff, a skillful and experienced mechanic, to look after and keep in repair his piping, engines, boilers, and other machinery, and that the plaintiff had informed him that a certain joint, L, made of cast-iron, was unsafe for the purpose for which it was used; that it should be malleable iron or brass, which the defendant disregarded, and it resulted in the injury complained of and received by the plaintiff in the discharge of his

duties, it is sufficient to be submitted to the jury upon the issue of defendant's actionable negligence, though the L joint and other instrumentalities used in connection therewith are shown to be those which were known, approved, and in general use for like purposes at the time.

## 2. Same—Independent Cause—Proximate Cause—Contributory Negligence.

While employed by the defendant to look after its engines, pipes, boilers, etc., the plaintiff was working at the back of a boiler, and hearing an explosion, he went to investigate. He was prevented from seeing his way by the escape of steam occasioned by the defendant's negligent use of an improper elbow in the piping in front of the boiler, and he stepped or slipped into the boiler pit, in which hot water had accumulated from the escaping steam, which he could not see for the steam, resulting in the injury complained of. *Held*, the slipping of plaintiff's foot was not an independent cause, relevant in this case only to the issue of contributory negligence; and the negligent use of the elbow, resulting in the escape of the steam, was a continuing cause and proximate to the injury.

CIVIL ACTION, tried before *Lyon, J.,* at October Term, 1916, of CRAVEN.

This is an action to recover damages for personal injury caused by falling in boiling water, which had escaped from a steam pipe which burst in a mill of the defendant, and at the close of the testimony the defendant moved for a judgment of nonsuit, which was refused, and the defendant excepted.

The plaintiff was employed to look after and keep in repair the piping, boilers and engines, and his duty required him to be in the boiler and engine room. At the time of the explosion he was in back of the boiler engaged in rolling tubes, and when he came out of the boiler the explosion occurred. He then went around in front of the boiler and the fire room and went forward to look at the inspirator to see if that wass all right, and stepped or slipped in the pit in front of the boiler, where boiling water had accumulated from the pipe which exploded.

The allegation of negligence is that the elbow was defective in that it was made of cast-iron when it ought to have been malleable iron or brass.

1. The jury returned the following verdict:

1. Was plaintiff injured by the negligence of the defendant, as alleged in the complaint? "Yes."

2. If so, did plaintiff by his own negligence contribute to his injury? "No."

3. What damage, if any, is plaintiff entitled to recover? "$2,000."

Judgment was entered upon the verdict in favor of the plaintiff, and the defendant appealed.

*D. L. Ward and E. M. Green for plaintiff.* -
*Moore & Dunn and Guion & Guion for defendant.*

Allen, J. The appeal presents two questions for decision: (1) Is there evidence of negligence? (2) If so, is there evidence that this negligence was the proximate cause of th injury to the plaintiff?

In considering the evidence of negligence we must keep in mind the duty imposed upon the defendant, because negligence is the breach of a legal duty, and it is only when we have a clear conception of the duty that we can properly appreciate evidence upon its breach.

It is conceded by the defendant that it was under a legal obligation to provide the plaintiff a reasonably safe place to work and reasonably safe machinery and appliances, but it contends that it has shown that it furnished machinery aand appliances, approved and in general use, and that this is a full performance of its duty.

This is not, however, a final test; and if it was defective and unsafe machinery could be used by all doing a like business, and the larger the number using such machinery the stronger would be the evidence of its being approved and in general use, and the greater the freedom from liability.

The rule, as applicable to the facts in this record, is correctly stated by *Justice Hoke* in *Ainsley v. Lumber Co.,* 165 N. C., 122: "An employer owes it as a duty to his employee working at machines driven by mechanical power and more or less dangerous and intricate, to supply him with appliances, etc., which are reasonably safe and suitable, and to exercise the care of a prudent man in looking after his safety; and this duty may not always be fully discharged by furnishing him such implements and appliances as are 'known, approved, and in general use' "; and by *Justice Walker* in *Dunn v. Lumber Co.,* 172 N. C., 129: "It is not always a full performance of the master's duty to provide merely for his servant implements and appliances which are known, approved, and in general use. He will still be liable for any injury proximately resulting from a failure to perform that duty in any other respect. He is not permitted to put defective machines or appliances in the hands of his servant with which to do the work, even though they may be of the requisite model, or type, and if he is negligent in so doing, and thereby causes injury to the servant, he must answere in damages for the wrong. *Ainsley v. Lumber Co.,* 165 N. C., 122, 81 S. E., 4; *Kiger v. Scales Co.,* 162 N. C., 133, 78 S. E., 76. This rule has frequently been recognized by us in negligence cases. It is a part of his obligation to furnish appliances "which are known, approved, and in general use," but not necessarily all of it; and if he complies with that part of it and is otherwise negligent in not supplying a reasonably

TAYLOR v. LUMBER CO.

safe place for the work to be done, or reasonably safe machinery, tools, and appliances with which to do it, he falls short of the legal measure of his duty."

Is there evidence of a breach of this duty in that the defendant furnished unsafe machinery?

The plaintiff was employed by the defendant to look after and keep in repair the piping, engines, boilers, and other machinery, and there is no evidence that he was not competent.

He was, therefore, recognized by the defendant as a skillful, experienced mechanic, whose opinion could be accepted as to the safety of machinery, and he testified that the elbow, called an L, in which the explosion occurred and from which the boiling water came, was made of cast-iron, and that "Before that 'L' was put in there that blew out, I had a conversation with Mr. Walker about its being safe to put it in there. I told him it wasn't safe to put a cast-iron in the fire like that; it ought to be malleable iron or brass."

This evidence, while in the form of a conversation with the superintendent of the defendant, is in effect a statement that the elbow was unsafe, and the fact that it was not objected to gives indication that the witness was known to be an expert.

Gabe Whitfield, another witness for the plaintiff, testified: "I remember the occasion when this elbow was put in. I don't know who brought it there. Mr. Walker furnished it to Mr. Taylor and Mr. Taylor told him it would be best to put in malleable iron because that boiler had high pressure and it would not stand the pressure, and Mr. Walker told him to put it in, and he put it in. I was engineer at that time."

The explosion, occurring as it did at the precise point of danger indicated by the plaintiff, is also strong corroboration of his opinion.

There is, therefore, evidence that the defendant furnished unsafe machinery, and that it had knowledge of the danger, and this would be a breach of duty and negligence.

Is there evidence that this negligence of the defendant was the proximate cause of the injury to the plaintiff?

As was said in *Paul v. R. R.,* 170 N. C., 232, "Much of the difficulty in the application of the doctrine of proximate cause arises from the effort on the part of the courts to give legal definition to what is essentially a fact, and in most cases for the determination of a jury."

The rule generally adopted and approved is as stated by *Mr. Justice Strong* in *R. R. v. Kellog,* 94 U. S., 469. He says: "The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact at-

TAYLOR *v.* LUMBER CO.

tending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or, as in the oft-cited case of the squib thrown in the market place. 2 Bl. Rep., 892. The question always is, Was there an unbroken connection between the wrongful act and the injury—a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independnt cause intervening between the wrong and the injury? . . . We do not say that even the natural and probable consequences of a wrongful act or omission are in all cases to be chargeable to misfeasance or nonfeasance. They are not when there is a sufficient and independent cause operating between the wrong and the injury. In such a case the resort of the sufferer must be to the originator of the intermediate cause. But when there is no intermediate efficient cause, the original wrong must be considered as reaching to the effect, and proximate to it. . . . In the nature of things there is in every transaction a succession of events more or less dependent upon those preceding, and it is the province of the jury to look at this succession of events or facts and ascertain whether they are naturally and probably connected with each other by a continuous sequence, or are dissevered by new and independent agencies, and this must be determined in view of the circumstances existing at the time."

Again, the same judge says in *Ins. Co. v. Boone,* 95 U. S., 117: "The proximate cause is the dominant cause, not the one which is incidental to that cause, its mere instrument, though the latter may be nearest in time and place. The inquiry must always be whether there was an intermediate cause disconnected *from the primary fault* and self-operating, which produced the injury."

In *Harrell v. Lumber Co.,* 154 N. C., 261, this statement of the law was approved, the Court saying: "Proximate cause means the dominant efficient cause, the cause without which the injury would not have occurred; and if the negligence of the defendant continues up to the time of the injury, and the injury would not have occurred but for such negligence, it is not made remote because some act, not within the control of the defendant, and not amounting to contributory negligence on the part of the plaintiff, concurs in causing the injury."

Applying these principles to the evidence, the question of proximate cause was for the jury.

The plaintiff, according to his evidence, which must be accepted on a motion for judgment of nonsuit, was where he had a right to be in

the performance of a duty; the steam, as he says, prevented him from seeing the boiling water, and he has been absolved from the charge of contributory negligence by the jury.

The motion for nonsuit does not rest on the ground of contributory negligence, and there is no exception directed to the second issue, and the jury might well say that there was "a continuous succession of events so linked together as to make a natural whole," from the defective elbow to the plaintiff's injury.

The fact that the foot of the plaintiff slipped, throwing him into the water, is not an intervening cause, and is only relevant on the question of contributory negligence, as is held in *Aiken v. Mfg. Co.,* 146 N. C., 324; *West v. Tanning Co.,* 154 N. C., 48; *Lynch v. Veneer Co.,* 169 N. C., 170, in all of which cases recoveries were sustained because of the negligence of the defendant, although the plaintiff in each would not have been injured if his foot had not slipped.

The case of *Nelson v. R. R.,* 170 N. C., 170, is not in point. There was in that case no evidence of negligence, and it was correctly stated that the immediate cause of the *accident* was the slipping of the foot.

We are, therefore, of opinion that the motion for judgment of nonsuit was properly denied.

No error.