STACY, J., concurs in the result; Walker, J., dissenting.
This was an action for personal injuries received by plaintiff at the sawmill operated by the Camp Manufacturing Company, but owned by its condefendant, through the alleged negligence of the defendants. On motion of the defendants a judgment of nonsuit was entered and the plaintiff appealed.
It appears that the Carolina Timber Company owned the sawmill at which the plaintiff was working at the time of the *Page 219 
alleged injury, and the mill was being operated by its codefendant, the Camp Manufacturing Company. The plaintiff was employed to repair the machinery and chains and equipment attached to the fire-room and the big engine, but he was not operating any of the machinery. Whenever any part of the machinery which it was the plaintiff's duty to repair broke down or got out of order, the plaintiff had authority to stop the engine running it in order to make the repairs, and was also required to notify the operators of such machinery that it had been stopped for repairs, and it was the duty of those operating the machinery to see that it (207) was not thereafter started until notice from the plaintiff. This was the rule of the company under which the plaintiff was required to do his work.
The machinery in the sawmill proper was run by a big engine connected with which there were whistles to notify employees when the machinery was going to be stopped, and after being stopped, when it would be again started. There was a smaller engine in another room which ran the dust chain in which the plaintiff was caught and injured. There were no signals attached for starting or for stopping the machinery operated by the small engine. This dust chain carried fuel to the boilers which generated steam for running both engines. The plaintiff was compelled to rely upon the observance of the company's rule for his protection while repairing the engine and machinery.
On this occasion the plaintiff, on going into the room of the little engine which ran the dust chain, discovered that the pilot chain which in turn drove the dust chain, had been caught at some point in the dust house by an obstruction which stopped its moving, and thus had broken the pilot chain. He then went to the men who operated the engine, pulling the dust chain, and told them he had shut down the dust engine in order to go into the dust house to make the necessary repairs to the dust chain there, and in accordance with the rules of the company, he notified them not to start the engine and machinery connected with the dust chain until he had advised them that the repairs were complete and everything was ready for operation. He then went into the dust house, and finding a lightwood knot had been caught by the dust chain which stopped it, he, with the aid of another employee, began to remove the lightwood knot. He had just succeeded in doing this, and while in the act of stepping from astride the dust chain, the operators of the dust engine suddenly, without warning, started up the dust engine, which caused the dust chain to catch his foot, and winding around his foot and leg, it was only by grasping two posts he prevented himself from *Page 220 
being ground up. His helper ran into the engine room and had the power turned off. The evidence further shows that shortly after the plaintiff had caused the engine to be shut down and notified the operators not to start the same, one of them went out of the engine room to a lumber pile, and returning after a delay of some twenty or thirty minutes, was ordered by some one to turn on the power. He replied that the engine had been stopped for repairs to the dust chain, and asked if the plaintiff had come out of the dust house, and being erroneously told that he had, the power was turned on, causing the injury to the plaintiff as above stated.
Upon this evidence, the case should have been submitted (208) to the jury:
1. It was the duty of the defendants, operating highly dangerous machinery, to have given the plaintiff a safe place in which to work. There was a system of signals for starting and stopping the machinery connected with the larger engine, and if a similar system had been used in regard to starting and stopping the machinery connected with the dust chain by running a wire to the room in which the engine operating the dust chain was located, or a similar or a small whistle had been put on the steam pipe leading to the dust engine, notice would have been given to the plaintiff, which would have enabled him to escape this injury. The circumstances in evidence as to the manner of the injury are prima facie evidence of negligence in not equipping the smaller engine with a signal such as was placed upon the larger engine, to give notice of its starting up. At least, this was sufficient evidence of negligence to have been submitted to the jury.
2. In American Car Co. v. Rocha (C.C.A.), 257 F. 297, it was held that where a plaintiff was at work under a car which had been raised from its tracks and blocked up, his employer owed him a positive duty to warn him before the car was moved, which could not be delegated to another employee so as to relieve itself from liability for its negligence resulting in plaintiff's injury. This judgment by the United States Circuit Court reviewed and affirmed the judgment to the same effect in the District Court. The appellant then moved in the United States Supreme Court for acertiorari, which was denied.
In Collins v. Bonner, 268 F. 699 (Court of Appeals D.C.), it was held that an employer under his duty to give the employee a safe place in which to work is negligent if the hoisting engineer in his employ starts an engine regardless of conditions whereby an employee is injured.
In Ondis v. Tea Co., 82 N.J.L. 511, it was held, "When the place *Page 221 
assigned the employee to work is safe for him while the machinery, with which he is obliged to come in contact, but which he is not operating, is at rest, and which is liable to become of great peril to him, when such machinery is put in motion, and a method of warning him of such starting by another employee who is in control of the engine, has been the rule adopted by the company, the neglect of the latter to give the warning is to be imputed to the employer." This is an elaborate opinion, concurred in by all the Judges in that case, and is exactly on all fours with the case at bar.
The duty of the master to provide and maintain a reasonably safe place for the servant to work is implied in the contract of hiring, and if he commits to any other employee or servant the duty of maintaining and keeping a reasonably safe place for that purpose, then the agent to whom this duty is committed is (209)pro hac vice the representative of the master, who is liable to the same extent as if he had personally performed the negligent act. Buchanan v. Furnace Co., 178 N.C. 646. To the same purport are Evans v. Lumber Co., 174 N.C. 31; Odom v. Lumber Co.,173 N.C. 134; Patton v. Lumber Co., 171 N.C. 837; Wooten v. Holleman,ib., 461; Midgett v. Mfg. Co., 180 N.C. 24.
The evidence shows that under the rules under which the plaintiff was working when the machinery was set down for repairs, the persons to whom the master had committed the running of the engine should not start up until the plaintiff notified the operator that the machinery was ready for running. This rule was a representation to the employee that the employer would see to it that the machinery was not started while the plaintiff was repairing it. It was equivalent to a promise to that effect, the execution of which could not be shifted off to some other employee, and for damages sustained from a breach of the same, if so found by the jury, the employer would be liable.
3. The duty of the master is not fully performed by simply doing that which is usually done, or furnishing machinery and tools known, proved and in general use, but he must take such precautions in addition thereto as an ordinarily prudent person charged with a like duty should have and ought to have foreseen were necessary and proper under the circumstances. Taylor v.Lumber Co., 173 N.C. 112; Dunn v. Lumber Co., 172 N.C. 129; Ainsley v.Lumber Co., 165 N.C. 122; Kiger v. Scales Co., 162 N.C. 133.
It was also earnestly debated before us whether, the sawmill being highly dangerous machinery, the owner could relieve itself from liability for the negligence of its lessee, and also whether the lease by the owner to the lessee, both companies having the same *Page 222 
identical stockholders and officers, was such a lease as would protect the owning company from being liable for the negligence of the operating company. As the case must go back anyway, it is not necessary to pass upon these propositions, as on another trial the evidence on these points may be more fully brought out, and possibly, if the parties are so advised, issues of fact may be submitted in regard thereto.
The judgment of nonsuit is set aside, and there will be a
New trial.
STACY, J., concurs in result.