### GEORGE J. LACEY v. IDEAL HOSIERY COMPANY.

(Filed 13 September, 1922.)

1. **Employer and Employee—Master and Servant—Duty of Employer—Safe Appliances—Negligence—Evidence.**

   The plaintiff was employed in the defendant's knitting mill, among other things, to place stockings, after they had been dyed, into a basket or receptacle for drying, and which he was to revolve for that purpose, at great speed, with power-driven machinery; that there was an opening in this basket through which the ends or parts of the stocking would fly from the revolving basket, importing menace to the operator, and which was closed in more improved devices of this sort, and which, in the present case, could have been closed at small expense without diminishing the usefulness of the basket; that while operating the machine the plaintiff's arm was caught by the flying ends of the stockings and thus drawn into the machinery and severely injured: *Held,* sufficient to take the case to the jury upon the issue of the defendant's actionable negligence in proximately causing the plaintiff's injury by its failure to exercise reasonable care in the selection of the appliance with which the plaintiff was required to work.

2. **Same—Rule of the Prudent Man—Appliances Known and Approved—Unnecessary Dangers.**

   The duty of an employer to furnish an employee, in the observance of ordinary care in the selection of power-driven appliances at which the

employee is required to work in the performance of his duties, is not fully met when he furnishes like appliances to those known and approved and in general use in plants of the same character, for it is also required of him, under the rule of the prudent man, not to subject his employee to obvious and unnecessary dangers, which could be readily removed without destroying or seriously impairing the efficacy of the implement, and of which he knew, or should have known under the circumstances, in the exercise of ordinary care.

APPEAL by defendant from *Daniels, J.,* at February Term, 1922, of PASQUOTANK.

The action is instituted by plaintiff, an employee of defendant company, to recover damages for physical injuries caused by the alleged negligence of defendant company in failing to provide a proper machine with which to do plaintiff's work, and in negligent failure to keep said machine in proper repair. There was denial of liability by defendant company, and plea of contributory negligence on part of plaintiff. On issues submitted there was verdict for plaintiff, assessing damages. Judgment, and defendant excepted and appealed.

*W. L. Small and Meekins & McMullan for plaintiff.*
*Thompson & Wilson and Aydlett & Simpson for defendant.*

HOKE, J. The evidence on the part of the defendant tended to show that in July, 1919, he was employed by defendant company in its hosiery mill, his duties being to fire the boiler, to dye stockings and operate a hydro-extractor, a machine designed as its terms import, to wring the water from the stockings as they were taken from the dyeing vat situated near. That this machine, driven by a belt and pulley connected with the motive power, consists of a perforated metallic basket about 24 inches in diameter, revolving on a spindle or shaft running through, and which worked in a bearing overhead, and this basket was set in an iron casing in which it revolved, and had a rim or flange of three or four inches at the top, but leaving an opening from which the stockings would not infrequently fly out when the basket was in rapid motion. That the machine was started by the operator giving the basket a "twirl" and letting on the power gradually till a speed of sixteen or seventeen hundred revolutions a minute was attained. That it was a part of plaintiff's duties to carry the stockings from the dye vat and pack them in this basket, start the machine and let on the power. That owing to the opening at the top of this basket, the stockings, as stated, would frequently fly out, and with such force as to threaten serious injury to the operator, or any one standing very near the machine. That on the occasion in question plaintiff had packed the basket with the wet stockings and let on the power, standing in the proper position for the pur-

pose when some of the wet stockings were thrown partly out of the opening in the top of the machine, one end being fastened therein, and the other caught witness around the wrist, dragged his arm into the basket, around the shafting, broke the bones of the arm in several places, taking off all the flesh. Witness stopped the machine with the left hand, when it was found that there were stockings around plaintiff's right wrist and other end being around the spindle, the arm broken and lacerated so that it had to be amputated.

There was further evidence for plaintiff to the effect that these baskets for the past five or six years had not been made with an opening, but were closed over with a steel or heavy tin covering, which afforded full protection to the operator, and that in the older machines like this a covering could be affixed at a very small cost and without at all impairing its efficiency or usefulness. Plaintiff testified further that in this particular machine, now antiquated, the bearings on which the spindle or shaft worked were old and worn, causing the basket to "jerk and wobble," thereby increasing the liability of injury by stockings flying out of the same; that plaintiff had called this to the attention of his supervising foreman, who had said he would have it fixed; that the machine was properly packed on this occasion, and with proper weight of stockings according to plaintiff's best judgment, the only guide given him to determine it.

There was testimony for defendant to the effect that while these recent machines had the covering referred to, those without such covering were also very much used, and there was no probability of injury therefrom when properly packed and operated. There was evidence, also, that this plaintiff had been in the habit of putting his hand in or over the opening in the basket when the same was in motion, and had been cautioned about it by his boss a half dozen or more times; and further, he had been very carefully trained and instructed as to the proper packing of the basket, and when these instructions were followed there was no reasonable probability of harm. That after the occurrence, the machine was examined and found to be overloaded and improperly packed, etc.

In a full and well considered charge these opposing positions were submitted to the jury, who have, as stated, rendered their verdict in plaintiff's favor, assessing his damages at $7,131.66, and we can find no valid reason for disturbing the result. The only objection seriously insisted on by appellant is to a portion of the charge, in which the learned judge instructed the jury, in effect, that though the machine in question here was one "approved and in general use, yet if in the practical operation it had been disclosed that there was menace of serious injury to employees engaged in running the same, which could have been readily removed, and without impairing its efficiency, and this was

known to the employer or should have been discovered by him in the exercise of reasonable care, a failure to remedy such a defect might constitute a breach of the dominant duty incumbent on the employer in the exercise of reasonable care to supply the employee with machinery that was reasonably safe and suitable for the work in which he was engaged." And if the jury were satisfied by the greater weight of the evidence that in the present instance there was such breach of duty, and the same was the proximate cause of plaintiff's injury, they would answer the issue as to defendant's negligence "Yes."

The principle here laid down by his Honor was carefully considered and upheld by this Court in *Ainsley v. Lumber Co.,* 165 N. C., 122, and the position has been repeatedly approved in our decisions on the subject. *Sutton v. Melton,* 183 N. C., 369; *Cook v. Mfg. Co.,* 182 N. C., 205-206; *Taylor v. Lumber Co.,* 173 N. C., 112; *Dunn v. Lumber Co.,* 172 N. C., 122.

In *Ainsley's case, supra,* the intestate of plaintiff had been killed while operating a lathing machine as employee of defendant, and there was evidence to the effect that the machine was one known, approved, and in general use, and there was evidence to the effect further that the machine in question consisted chiefly of two circular saws, which in their operation not infrequently projected pieces of lumber with great force towards the operator, thereby putting him in serious danger, and that without impairing the efficiency of the machine and at comparatively small cost, by annexing to the machine a small iron shield four or five inches wide, complete protection would have been afforded, and it was held that the full measure of an employer's duty was not always or necessarily met by supplying a machine that was known, approved, and in general use.

And the Court, in its opinion, said: "Speaking, then, further to this rule that an employer must furnish implements, etc., which are known, approved, and in general use, a fuller statement of the requirement is that where machinery is more or less complicated, and especially when driven by mechanical power, there must be supplied for employees machinery, implements, and appliances which are 'known, approved, and in general use by prudent and skillful employers, and in well regulated concerns.' From this we think it follows that an employer is not protected, as a conclusion of law, because he is operating a machine which is 'known, approved, and in general use,' but, although such a machine or appliance may have been procured, if its practical operation should disclose that employees are thereby subjected, not to the ordinary risks and dangers incident to their employment, but to obvious and unnecessary dangers which could be readily removed without destroying or seriously injuring the efficiency of the implement, such conditions, if

known, or if allowed to continue, might permit the inference of culpable negligence against the employer; that he had not, in the particular instance, measured up to the standard of care imposed upon him by the law; a position upheld by many authoritative cases and by text-writers of approved excellence."

And in *Cook's case, supra,* the opinion by the *Chief Justice,* it was held, among other things: "It is not alone sufficient that the master has furnished his servant such machinery, tools, and appliances as are usually furnished for doing the work under dangerous conditions similar to those in which the servant is required to work, that are known, approved, and in general use, but he must further take such precautions for his servant's safety as an ordinarily prudent person charged with a like duty should and ought to have foreseen were necessary and proper under the circumstances."

The charge of his Honor, therefore, is in full accord with our rulings on the subject, and the judgment for plaintiff must be affirmed.

No error.