E. W. WINBORNE v. THE INTERSTATE COOPERAGE COMPANY.

(Filed 24 September, 1919.)

1. **Employer and Employee—Master and Servant—Duty of Master—Tools and Appliances—Defective Tools—Negligence.**

In order to recover damages for a personal injury resulting to an employee in using simple, every-day tools upon allegation that the employer had failed to furnish him proper tools and appliances for the work the former was required to do in the course of his employment, it must be shown, among other things, that the injury resulted from a lack of such proper tools, or by reason of defects therein, which the employer is required to remedy, in the proper and reasonable discharge of his duties, and that the lack or defect complained of and made the basis of the charge is of a kind from which some appreciable and substantial injury may be reasonably expected to occur.

2. **Same—Evidence—Nonsuit—Trials.**

The plaintiff was employed by the defendant to take down old box-cars to save the iron therein, frequently requiring cutting the iron bolts from the rods, the plaintiff at first using his own tools, but to do the work faster required other tools, and an assistant, which was granted, the tools being supplied by a hardware store, upon defendant's order, of plaintiff's own selection. At the time of the injury the plaintiff directed his assistant to strike a cold chisel he was holding, with the poll of an ax belonging to the company, not enumerated by him in the list of tools he required, but found by him near the place and which he had used for several days without examining it, and the ax flew off the helve causing the injury complained of to the plaintiff's foot: *Held,* insufficient evi-

dence that the defendant had failed in his duty to furnish the plaintiff
with proper tools and appliances, etc., and a motion for judgment as of
nonsuit should have been granted: *Held further*, that the plaintiff's testi-
mony when recalled, to the effect generally that he had asked for more
tools and could not get them, when considered in connection with his
former entire statement and evidence, showing specifically that he had
the tools sufficient and proper for the work, will not affect the result.

ACTION tried before *Devin, J.*, and a jury, at April Term, 1919, of
BEAUFORT.

The action is to recover damages for physical injury, caused by
alleged negligence of defendant in not supplying plaintiff, an employee,
with sufficient and proper tools with which to do his work. On denial
of liability and plea of contributory negligence, there was verdict for
plaintiff and assessing damages at $550.

Judgment on the verdict for plaintiff and defendant appealed, assign-
ing for error, chiefly, the refusal of the motion for nonsuit.

*Ward & Grimes for plaintiff.*
*Small, MacLean, Bragaw & Rodman for defendant.*

HOKE, J. There were facts in evidence tending to show that in
August, 1917, plaintiff, employed by defendant for the purpose, was
engaged in taking down some cars, situate on a logging road a few miles
out from Belhaven, N. C.; that they were old cars, and it being desirable
to save as much of the iron as possible in shape for further use, it was
not infrequently required to cut the iron bolts from the rods used in
bracing the woodwork of the cars and serving to hold the frames to-
gether; that plaintiff, a carpenter of skill and experience, 63 or 64
years of age, having the ordinary tools for his work, which he was to
use as required on the present job, had taken down one or two of the
cars, when finding that he was not making satisfactory progress for lack
of a helper and adequate tools for the undertaking, applied for an
assistant and proper tools and was authorized to procure the help needed,
and was given further tools which he claimed were fit and proper, to
wit, a cold chisel and a hack-saw frame and blades for cutting iron and
a Stilson wrench, according to defendants, this last being the only tool
plaintiff had specifically mentioned, and that the hardware store was
directed to let him have the tools he selected, and the cold chisel, hack-
saw, frame and blades were both new and fitted for the work. That
after he with his assistant, one Wallace, had been engaged on the work
for two or three days, while plaintiff was holding the cold chisel in
place to cut off an iron bolt, plaintiff directed Wallace to strike the same
with an ax of the company which plaintiff says he had found out at the

cars, and as Wallace struck with the ax it came off the handle, the eye of the ax striking plaintiff's foot and making a bruise thereon which resulted in painful and protracted injury from which he still suffers. A perusal of our decisions on the subject will show that in order for liability to attach, in case of simple, every-day tools, it must appear, among other things, that the injury has resulted from a lack of such tools or defects therein which the employer is required to remedy, in the proper and reasonable discharge of his duties, and that the lack or defect complained of and made the basis of the charge is of a kind from which some appreciable and substantial injury may be reasonably expected to occur. Thus, in the recent case of *Rogerson v. Hontz,* 174 N. C., 27, where plaintiff was seriously injured by reason of a defective cant hook which he was using to load and place heavy saw logs, and of which defect the employer was fully aware, the Court, in setting aside an order of nonsuit in the case, and in reference to the rule of liability, said:

"On the facts as now presented the evidence tends to show that this cant hook was an implement suitable to the work and which the employer should supply; that while simple in itself it was designed, by leverage, to give the workman more power; that he was engaged in loading and unloading heavy logs from cars, rough work, and where he was frequently liable to be in position that if the hook slipped its hold or the handle broke severe injuries were not improbable, and, applying the principles of the case referred to and others of like import, the issue must be referred to the jury on the question whether the tool was defective; was such defect known to the employer, and was it of a kind which threatened substantial injury in its use?"

Again, in another very similar case in the same volume, *King v. R. R.,* 174 N. C., 39, stating the principle as it generally prevails in such cases, it was again said:

"In *Rogerson v. Hontz,* at the present term, the Court has held, in approving the decision of *Wright v. Thompson,* 171 N. C., 88, and other cases, that where an employee was injured by reason of defective tools supplied him, the employer was not necessarily relieved of all responsibility merely because the tools were of simple structure, but in case there was negligent default in the respects suggested on the part of the employer, and the defect was of a kind importing menace of substantial injury, having due regard to the nature of the work and the manner of doing it; and it was further shown that the employer knew of such defect, or should have found it out under the duty of inspection ordinarily incumbent upon him in such cases, that under certain conditions liability might attach." And in cases of *Wright v. Thompson,* 171 N. C., 88; *Young v. Fiber Co.,* 159 N. C., 375; *Mincey v. R. R.,* 161 N. C., 467-471; *Reid v. Rees,* 155 N. C., 230; *Mercer v. R. R.,* 154 N. C.,

399; *Cotton v. R. R.,* 149 N. C., 227, all of them, so far as examined, where recovery was sustained for lack of simple, ordinary tools or for defects therein, it was shown that the injury resulted from the breach of duty reasonably incumbent on the employer under all the facts of the case and that the defect was one from which some substantial injury was not unlikely to occur. Accordingly, a further examination of our authorities will disclose that where these elements or either of them are lacking, though there may have been some technical breach of duty, no actionable wrong will be imputed. Thus, in *Dunn. v. R. R.,* 151 N. C., 313, a case almost exactly similar to that before us, an employee was injured by a hammer flying off the helve, which he had been using several hours, giving him every opportunity to observe its condition, relief was denied. And in the more recent case of *Morris v. R. R.,* 171 N. C., 533, a plaintiff, an employee of defendant company, was using a heavy hammer, driving spikes into crossties to hold the rails secure, he was standing in an uneven position with one foot on a soft or shelving pile of dirt; the hammer, from continuous use, had become very slick on the head and the employee had been promised a new one. In driving a spike in the position indicated the hammer slipped off, jerking the employee down and causing a severe and painful injury to his back for which he sued. In sustaining an order for nonsuit in the case, the Chief Justice thus clearly states the distinction to which we are adverting:

"The whole subject has been very recently reviewed in *Wright v. Thompson,* 171 N. C., 88, with full citation of authorities. In that case, in repairing a dredge, whose crane and dipper had become loosened, the plaintiff, in driving in the drift-pin to fasten them, struck it with a hammer, when a piece of steel from the defective and broken drift-pin flew off and struck the plaintiff in his eye and put it out. We set aside the nonsuit because it was shown that the drift-pin furnished the plaintiff had been broken off and had remained so at least thirty days, and the plaintiff had notified the foreman of its defective condition. Injury might reasonably have been expected from such cause. That was certainly a very different case from the present. Here the tool was a hammer, and it could not be anticipated that on striking the spike to drive it into the crosstie the hammer would slip, nor that by its going two inches further the plaintiff's back would be sprained. His standing upon a loose mound of earth also certainly was a mere incident, and could not have been expected to cause injury." On a proper application of the principles applied in these cases and the facts appearing in the record we are of opinion that no recovery can be had by plaintiff, and defendant's motion for nonsuit should have been allowed. True, plaintiff, when called back to the stand, says in general terms, "That he couldn't get no tools and went over there two or three times and begged

for tools," but in his principal examination he states very clearly that he had and was using a cold chisel, a hack-saw, both frame and blades, all new, and that these were the tools desirable and suitable for the work in which he was engaged. As to the "bolt clipper," while this seems to be a tool recognized and sold in the trade, we do not find that such a tool was in use in this kind of work, nor do we recall that any witness had even seen one large enough to cut three-quarter bolts, the size the plaintiff was dealing with in this instance. And in reference to the ax that Wallace was using at the time to drive the cold chisel, that plaintiff had never made any complaint that he needed a different tool for the purpose, and if he had, the injury was not on account of any difference that might have existed between a hammer and an ax but because the ax had not been made tight and secure on the handle, a defect that might just as likely have developed had he been using a hammer. He had found the ax there and had been using it for several days and had every opportunity to put the ax in better shape and failed to do it.

On consideration of his entire statement and the other uncontradicted testimony you are forced to the conclusion that plaintiff's injuries are attributable to his own default or that of his colaborer in not keeping his axe in safer condition. As he says himself, "I hadn't looked at the ax; I suppose I didn't take time."

This will be certified that the verdict and judgment be set aside and defendant's motion for nonsuit be allowed.

Reversed.