This is an action for actionable negligence brought by plaintiff against defendant. The defendant denied negligence, and set up the plea of contributory negligence. The evidence was to the effect that plaintiff had been an employee of defendant for three years prior to the time he was injured, 19 June, 1930. Among plaintiff's duties was that of loading scrap iron from a scrap pile on a dinky car. This dinky car ran on a track and was operated by hand, and was about as large as a one-horse wagon. Defendant had three employees for this purpose. The plaintiff usually had two helpers to do this work, and on the day the injury occurred, about 12 o'clock, one had gone to dinner. The scrap iron was placed on the dinky car and taken a short distance and put in a cubilo to be melted. The scrap iron was brought in defendant's yard by the railroad on a side track, and unloaded. The place where the scrap iron was thrown out from the railroad car, in the yard of the defendant, was a weatherboarded shed about five feet high, which was to keep the scrap iron from falling on the railroad track, when it was thrown in the shed it scattered everywhere.
The plaintiff, on cross-examination, testified, in part: "When you bring that dinky car up to the edge of the scrap which is scattered all around there, it is loaded and they carry it down and empty it in the furnace. That is just about as far as from here to the back end of the court-room. As you pile this scrap lying around the pile on the dinky car, then the dinky car moves a little farther on the track and keeps moving along as you work on the scrap pile. You bring the little dinky car up to near the scrap pile, as near as you can bring it, then you pick up the scrap and pile on there and empty it, and then you move it a little farther to the back part of the scrap pile, and can pick up stuff as you move it along and haul it to the furnace. We pick up larger scrap when we want it quick, and when the larger scrap is there we pick it up. . . . On this occasion, Sam Worley was there with me. We were both picking scrap and putting it on the dinky car, him on the left side and me on the right. I saw a big piece pretty high upon the scrap pile and I reached to feel of it to see if it was substantial. I took my hook and pushed it to see if it would fall, and when I pushed it, it did not fall. That piece was safe up there. It was not loose. At that time another piece fell out of the scrap pile and struck me, and knocked me back and caused me to get hurt. I did not have a piece of iron in my hands when it hit me, but did have my hook in my hand. That hook was furnished me for the purpose of hooking scrap pieces out of the pile. I know I had a hook. I think Sam Worley had a pitchfork. The piece that pulled out and hit me was one of these pipes, these old-time *Page 777 
heater pipes. It was heavy enough, and if it had been any heavier I don't know whether it would have done any more injury or not. It bruised my leg. I fell back after it struck me. I believe it weighed 90 to 100 pounds. I had been working there about three years, and had been doing this same kind of work the whole time I was there. I understood how to load scrap iron on the dinky car. We knew the job. Sometimes would not see the boss man unless we went to him and needed some help. That was just a part of my job like it was some one else's job, and like Will Worley's job, to load that up, and I went there and did it. No one stood there and told me what piece to put on the dinky. I used my own head about what piece to take up and put on. If a piece was too large for me to put on myself, of course I would call Sam or Will to help me. I would use my own head about which piece to put on the dinky car. I would reach down and get them. No one told me which piece to pull out. I didn't pull out any piece. If I could handle it, I would handle it, and if too large would get them to help me. No one told me what particular piece to put on. I decided that myself."
The defendant, at the close of plaintiff's evidence and at the close of all the evidence, made motions for judgment as in case of nonsuit. C. S., 567. The court below, at the close of all the evidence, sustained defendant's motion for nonsuit, and in this we see no error.
In Allen v. Lumber Co., 181 N.C. at p. 505-6, is the following: "A perusal of our decisions will show that in order for liability to attach, in a case of simple, ordinary, everyday employment, and where the laborer is allowed to exercise his own judgment as to how the work should be done, it must appear, among other things, that the injury has resulted from some omission or defect which the employer is required to fulfill or remedy, in the proper and reasonable discharge of his duties, and that the omission or defect complained of and made the basis of the charge is of a kind from which some appreciable and substantial injury might be expected to occur when tested by the standard of reasonable prudence and foresight. Winbornev. Cooperage Co., 178 N.C. 88, and cases cited." Simpson v. R. R.,154 N.C. 51, is similar to the case at bar.
Defendant furnished a suitable hook with which to do the work and competent fellow-workmen, and from the evidence it would seem that plaintiff made, and as it were, carried his own place of work with him, and used his own judgment as to the method of doing it. We find in law
No error. *Page 778